939 So.2d 278 (2006)
ZAMIR GARZON and RAY C. BALTHAZAR, Appellants,
v.
STATE OF FLORIDA, Appellee.
No. 4D04-4699, No. 4D04-4705.
District Court of Appeal of Florida, Fourth District.
October 18, 2006.
Samuel R.R. Halpern, Fort Lauderdale, for appellant Zamir Garzon.
John Cotrone, Fort Lauderdale, for appellant Ray Balthazar.
Charles J. Crist, Jr., Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellee.
GROSS, J.
The primary issue we address in this case is whether the trial court's use of the "and/or" conjunction between the names of codefendants in jury instructions on substantive crimes amounted to fundamental error. We hold that, under the facts of this case, no fundamental error occurred, since the principals instruction placed the substantive crime instructions in the proper context. However, we find that fundamental error did occur, on a separate ground, as to two kidnapping counts, so we reverse those convictions as to each defendant.
This case arose from a home invasion that occurred on June 4, 2003. Along with another codefendant Charly Coles, appellants Zamir Garzon and Ray Balthazar were charged with criminal conspiracy, armed burglary of a dwelling, armed robbery, three counts of armed kidnapping, and extortion. After a jury trial, Balthazar was convicted as charged on all counts; Garzon was acquitted of the extortion and convicted on all other counts.

Evidence of March 21 and 22, 2003 Offenses
At a hearing on the state's motion to offer evidence of other crimes, Kerry Smith, a high school boy, testified that on March 21, 2003 he was hauling furniture in his truck when a red Ford Explorer rear-ended him. He got out of the truck to talk with the Ford's driver, a tall, skinny man with curly hair wearing military fatigues. Talking on a cell phone, the driver said, "I hit a kid. I need to take care of this." Kerry noticed that the passenger in the Ford also wore military fatigues and held a gas mask.
Suddenly, the driver grabbed Kerry by the throat and the passenger tried to pull him into the Ford. Kerry broke away, ran to his car, and escaped. He identified Coles and Balthazar as the two men in the Ford.
Kerry's grandmother, Doris Smith, testified that on March 22 Kerry's family went to Sebastian. At about 9:00 p.m., she went to her son Michael Smith's house to let out the dogs. An intruder placed his hand over her face and pushed her onto the bedroom floor; he was a dark skinned Latino, significantly taller than her 5 foot 4 inch height. Mrs. Smith heard a second voice tell the man holding her to "get that mask off, it looks stupid." The two men spoke Spanish to each other. One man spoke to her in English and demanded to know where the safe was. She told them and the men commanded her to disclose the combination to the safe, which she did not know. Smith heard a noise that sounded like a safe being dragged. One of the men spoke on a cell phone and said, "This is not the motherfucking way you said it was." Smith never got a good look at the two men and could not identify them.
The court ruled that the evidence was admissible.
At trial, both Kerry and his grandmother testified to essentially the same facts as outlined above.

Evidence of the Charged Crimes
On June 4, 2003, Marie Azzarone entered the Pompano Beach home of Kerry's parents, Sandra and Michael Smith, where she worked as a housekeeper. Wearing "soldier pants," Coles pushed Azzarone into the house by the neck, holding a gun to her head. Coles forced her to lie face down on the kitchen floor; he brought the Smiths' daughter, Jamie, into the kitchen and forced her onto the floor.
Sandra Smith testified that the two gunmen came into the house as she was preparing to take her daughter to school. One wore dark clothes, gloves, and a ski mask. The other was tall and dark, with no mask and no gloves. Both men carried guns. Balthazar put a gun to Sandra's head and dragged her to a hidden safe. He knew the location of the safe, even though it was concealed behind a false wall that looked like bookshelves. Balthazar forced Sandra to get the key to the safe and open it. From the safe, Sandra loaded Rolex watches and jewelry worth $150,000 into a pillowcase while Balthazar put on a mask and gloves. Sandra asked if she could keep her wedding ring. Balthazar asked into a cell phone whether she could keep the ring. Then, referring to the person on his cell phone, Balthazar said, "He tells me that you're not allowed to have it because your husband does not deserve for you to wear it. . . . He's fucking another woman in the Dominican Republic and you're too good to even see it." Michael Smith admitted at trial to having an affair with a woman in the Dominican Republic.
Balthazar forced Sandra to the front of the house, where she saw her daughter and Azzarone on the floor, with Coles standing over them holding a gun. Balthazar told Sandra that they had followed her and her daughter to the Coral Springs Mall and to a restaurant at the end of May. He repeatedly asked where the cash was. Sandra said she had none. To force Sandra to lead him to the money, Balthazar threatened to use the stove to burn her daughter's "beautiful ass." Sandra went with Balthazar to her bedroom, where he found a briefcase containing $13,000 in cash. Balthazar and Coles took the jewelry and money, tied up the two women and the girl in a back room, and left. The two women were able to get loose and call the police.
The state's theory of the case was that Garzon directed the home invasion by his cell phone conversation with Balthazar. Garzon had previous connections with the Smiths. He had been in the Smiths' home numerous times, working for a man who had built the false wall safe. The state presented evidence of a 39-minute cell phone call at the time of the home invasion; the call originated from Pompano Beach between Balthazar and a cell phone number identified with Garzon. Other testimony indicated calls between Balthazar's phone and Garzon's phone during the time when Balthazar and Coles had followed Sandra and her daughter.

The Charge to the Jury
The three defendants were tried together before a single jury. The day before the trial court charged the jury, the judge provided all counsel with a packet of instructions. The next day, the court asked all the lawyers if they had reviewed the instructions and whether they had any objections. The prosecutor and all defense counsel indicated that nothing in the instructions needed to be changed.
The court charged the jury on criminal conspiracy as follows:
To prove the crime of criminal conspiracy as charged in Count I of the information, the State must prove the following two elements beyond a reasonable doubt. Number one, the intent of Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar was that the offense of armed robbery or armed burglary of a dwelling would be committed. Number two, in order to carry out the intent, Zamir Garzon, and/or Charly [sic] Coles and/or Ray Balthazar agreed, conspired, combined or confederated with each other to cause either the offense of armed robbery or armed burglary to be committed either by all of them or one of them or by some other person.
(Emphasis added).
As to armed burglary, the court charged the jury:
[T]o prove the crime of armed burglary of a dwelling, as charged in Count Two of the information, the State must prove the following three elements beyond a reasonable doubt. Number one, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar entered or remained in a structure owned by or in the possession of Sandra Smith.
Number two, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar did not have the permission or consent of Sandra Smith or anyone authorized to act for her to enter or remain in the structure at the time.
Number three, at the time of entering or remaining in the structure, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar had a fully formed, conscious intent to commit the offense of grand theft and/or robbery in that structure.
(Emphasis added).
On the robbery with a firearm charge, the court charged the jury as to the first element:
Number one, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar took the jewelry and United States currency from the person or custody of Sandra Smith.
Regarding armed kidnapping, the court charged the jury:
To prove the crime of armed kidnapping as charged in the information, the State must prove the following three elements beyond a reasonable doubt. Number one, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar forcibly, secretly or by threat confined, abducted or imprisoned Maria Azzarone as to Count Four or Jamie Smith as to Count Five or Sandra Smith as to Count Six against her will.
Number two, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar had no lawful authority.
Number three, Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar acted with intent to commit or facilitate the commission of robbery.
(Emphasis added).
On the crime of extortion, the judge charged the jury:
To prove the crime of extortion as charged in the information, the State must prove the following beyond a reasonable doubt. Zamir Garzon and/or Charly [sic] Coles and/or Ray Balthazar maliciously threatened by verbal communication to cause injury to the person of another, to wit Jamie Smith. Such communication having been made with the intent thereby to compel another person, to wit Sandra Smith, to do any act or refrain from doing any act against her will.
(Emphasis added).
After charging the jury on all of the substantive crimes, the court read the standard charge on principals. See Fla. Std. Jury Instr. (Crim.) 3.5(a).
If the defendant helped another person or persons commit or attempt to commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did, if the defendant had a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime. To be a principal, the defendant does not have to be present when the crime is committed or attempted.

The Use of the "And/Or" Conjunction in the Jury Instructions Was Not Fundamental Error
Balthazar and Garzon acknowledge that jury instructions are subject to the contemporaneous objection rule. See State v. Delva, 575 So. 2d 643 (Fla. 1991). The requirement of a contemporaneous objection to preserve an issue for appeal "is based on practical necessity and basic fairness in the operation of a judicial system. It places the trial judge on notice that error may have been committed, and provides him an opportunity to correct it at an early stage of the proceedings." Castor v. State, 365 So. 2d 701, 703 (Fla. 1978).
However, Balthazar and Garzon contend that the contemporaneous objection rule does not apply because the court committed fundamental error by using the conjunction "and/or" between the names of the defendants when charging the jury on the substantive crimes.
To be fundamental, an erroneous jury instruction "`must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" Delva, 575 So. 2d at 644-45 (quoting Brown v. State, 124 So. 2d 481, 484 (Fla. 1960)); see Floyd v. State, 850 So. 2d 383, 403 (Fla. 2002). This means that an erroneous jury instruction is fundamental error "`when the omission is pertinent or material to what the jury must consider in order to convict.'" Id. at 645 (quoting Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982)); accord Reed v. State, 837 So. 2d 366, 369-70 (Fla. 2002). Thus, "[f]ailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal." Delva, 575 So. 2d at 645.
Following Delva and Stewart, Florida courts have placed the responsibility on the trial judge to ensure "that the jury is fully and correctly instructed as to the applicable law." Moore v. State, 903 So. 2d 341, 342 (Fla. 1st DCA 2005). Florida courts have found fundamental error where the trial court incorrectly instructed the jury on an element of a crime that was in dispute. See Reed, 837 So. 2d at 369-70 (holding that the jury was incorrectly instructed on element of malice in aggravated child abuse); Moore, 903 So. 2d at 342-43 (concluding that the jury was incorrectly instructed as to whether pellet gun was "other deadly weapon" under statute prohibiting possession of a concealed weapon by convicted felon); Anderson v. State, 780 So. 2d 1012, 1014 (Fla. 4th DCA 2001) (concluding fundamental error occurred when court instructed jury on "non-existent element" of crime of fleeing and eluding, which was in dispute); Viveros v. State, 699 So. 2d 822, 824-25 (Fla. 4th DCA 1997) (finding circular instruction failed to properly instruct jury on the specific intent element of burglary). Florida courts have also found fundamental error when a trial judge fails to properly instruct the jury on an element of a defense that is disputed at trial. See Davis v. State, 804 So. 2d 400 (Fla. 4th DCA 2001) (holding inaccurate and misleading instruction on defense of entrapment); Carter v. State, 469 So. 2d 194 (Fla. 2d DCA 1985) (deciding that instruction on self-defense was incorrect and "necessarily misleading"); see also Bagley v. State, 119 So. 2d 400 (Fla. 1st DCA 1960) (holding that fundamental error occurred when jury charge failed to list "every essential element of justifiable homicide").
Balthazar and Garzon say that the inclusion of the "and/or" conjunction in the jury instructions is fundamental error because the jury "could" have convicted one defendant based solely upon the conclusion that another codefendant's conduct "may have satisfied the elements" of an offense.
However, the determination of whether fundamental error occurred requires that the "and/or" instructions be examined in the context of the other jury instructions, the attorneys' arguments, and the evidence in the case to decide whether the "`verdict of guilty could not have been obtained without the assistance of the alleged error.'" Delva, 575 So. 2d at 645; see Morin v. State, 790 So. 2d 588 (Fla. 5th DCA 2001) (holding that "confusing" and "rather senseless" instruction did not amount to fundamental error); see People v. Kitchen, 636 N.E.2d 433 (Ill. 1994). The supreme court took such a contextual approach in Delva, when it considered whether fundamental error occurred because the trial court failed to properly instruct the jury on an element of trafficking in cocaine, i.e., whether the defendant knew the substance he possessed was cocaine. 575 So. 2d at 644. The court found that the jury instruction was erroneous. Id. Yet, the supreme court held the error was not fundamental, because the defense at trial was that the defendant "did not know the package of cocaine was even in his car," not that the defendant "knew of the existence of the package[, but] did not know what it contained." Id. at 645. The supreme court concluded that "[b]ecause knowledge that the substance in the package was cocaine was not at issue as a defense, the failure to instruct the jury on that element of the crime could not be fundamental error and could only be preserved for appeal by a proper objection." Id.
The supreme court utilized a similar contextual approach to fundamental error analysis in Floyd. There, the supreme court held that an erroneous, incomplete instruction in the penalty phase of a capital case was not fundamental error, in part because the defense attorney's closing argument "fully present[ed] and discuss[ed]" those mitigation factors that had been omitted from the court's instructions. 850 So. 2d at 403.
This is not a case where the court failed to correctly instruct on an element of the crime over which there was a dispute. Compare Reed, 837 So. 2d at 369-70; Moore, 903 So. 2d at 342-43; Viveros, 699 So. 2d at 824-25. All elements of all crimes were correctly charged. What the "and/or" conjunctions placed in issue was whether one defendant could be held criminally liable for the conduct of a codefendant. If the law of principals applies to a defendant's conduct, that defendant can properly be convicted for a codefendant's criminal acts. Garzon could have been found guilty if either Coles or Balthazar committed a substantive crime and Garzon helped either man commit the crime within the meaning of the principals instruction.
In this case, the standard principals instruction placed all the other instructions in the proper context. The instruction explained that a defendant is responsible for the criminal act of another person if "the defendant had a conscious intent that the criminal act be done" and the "defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person . . . to actually commit the crime." Fla. Std. Jury Instr. (Crim.) 3.5(a). If the jury found the principals instruction applied to him, Garzon could lawfully have been found guilty of crimes that either Balthazar or Coles, or both, committed in the house.
With respect to Garzon, everyone in the courtroom knew that the issue boiled down to whether the state had proven that he was the person to whom Balthazar spoke over the cell phone during the home invasion.
The prosecution used the principals instruction as the centerpiece of its argument that Garzon was guilty of the crimes committed by his codefendants. The state did not use the "and/or" conjunctions to argue for a legally incorrect or improper theory of guilt. The prosecutor argued:
[On June 4], there were only two people with firearms inside the house, yet there are three people on trial charged with the same crimes. How is that possible? The Judge is going to read you an instruction that's titled principals. This is your classic example of the getaway driver being held responsible for the completed act of the person who drives to the scene. Principals will read as follows:
[Reads principals instruction]
[A]nd the kicker is, to be a principal the defendant does not have to be present when the crime is either committed or attempted. That's the law. . . . To be a principal the person does not even have to be present when the crime is attempted or committed.
How do you apply that to this case? The person on the other end of the phone during the course of the crime feeding information to the people inside the house about the layout of the home, about intimate information relating to the family, assisting the people inside the home to commit the offense, encouraging them to do so, and I submit to you benefiting on the back end from the proceeds of the crime, all people that participate and assist and encourage are to be treated as if the had done all the things the others did. Keep that in mind as a backdrop to the evidence that we're going to analyze.
Garzon's attorney hammered home in closing that there was insufficient evidence to prove that he was the person on the other end of the phone during the crime. He also argued that a reasonable view of the evidence was that another person, uncharged by the state, was on the phone with Balthazar.
The jury's acquittal of Garzon on the extortion count demonstrates that it followed the law on principals and was not misled by the "and/or" conjunction in the extortion instruction. The extortion charge was based on Balthazar's threat to use the stove to burn Jamie unless her mother led him to the cash hidden in the house. There was no evidence that Balthazar cleared this threat with Garzon over the cell phone. Although the jury found Balthazar guilty of extortion, it gave Garzon and Coles the benefit of reasonable doubt.
Judge Klein's dissent contends that the instructions given were fundamental error as to Garzon, without considering what instructions would have been proper in his case.[1] The problem that Judge Klein identifies in this case is that the jury "could have concluded that all defendants were guilty, based on the and/or instructions, before ever reaching the principals instruction."
A possibility of what the jury "could" do in response to a jury instruction is not the stuff of fundamental error. The law presumes that the jury has followed all of the trial court's instructions, in the absence of evidence to the contrary. See Sutton v. State, 718 So. 2d 215, 216 n. 1 (Fla. 1st DCA 1998). A proper approach to fundamental error considers the jury instructions as a whole, in the context of the case that was tried; a proper approach does not nitpick at the instructions to manufacture a fundamental error that was overlooked by all the participants at trial.
Even had the defense raised the objections now supplied by Judge Klein's dissent, we would not find reversible error. As we have said in another context, "[j]urors are not potted plants." Grant v. State, 738 So. 2d 1020, 1022 (Fla. 4th DCA 1999). It is more likely that they would resist the notion of the principals charge rather than blindly convict defendant A for defendant B's conduct, without proof of defendant A's culpability. It is a stretch for the average juror to believe that someone not present at the scene of a crime is as culpable as the defendant who actually committed the criminal acts. This is why prosecutors spend time in voir dire and closing argument discussing the principals charge.
The dissent contends that "the manner in which the jury was instructed made it unnecessary for the jury to consider whether Garzon had the intent, under the principals instruction, for the kidnapping to have occurred." To do this, the jury would have to have overlooked the undisputed fact that Garzon was not physically present at the Smith house, ignored the way the state and Garzon argued the case, and interpreted the jury instructions in an unusual way, contrary to common sense and not suggested by the argument of any party. In a vacuum, the inclusion of Garzon's name in the definition of the substantive crimes may have been confusing, since Garzon was not present in the house where the crimes occurred. Even if this were error, and had it been preserved by a timely objection, we would still find such error to be harmless under the facts of this case.
This case is distinguishable from two "and/or" jury instruction cases from this court, Davis v. State, 804 So. 2d 400 (Fla. 4th DCA 2001), and Williams v. State, 774 So. 2d 841 (Fla. 4th DCA 2000). The conclusion that the "and/or" conjunction gives rise to fundamental error in one context does not compel such a finding in every case where the conjunction appears.
Davis was a case where Antoinette Davis and her codefendant/husband both relied on an entrapment defense to the charges of trafficking in cocaine and conspiracy. 804 So. 2d at 401. The state offered evidence of the husband's predisposition to commit the offensesthe husband's two prior convictions for sale of cocaine. Id. The trial court's entrapment instruction told the jury that it was not entrapment if the husband "and/or Antoinette Davis had the predisposition to commit" the crimes charged. Id. at 403. We held that the instruction was fundamental error because it misstated a crucial element of the defenseit told the jury that it could convict Davis if "it concluded that" the husband "alone had a predisposition to commit the crimes." Id. at 405.
Davis did not involve a principals instruction that placed the "and/or" language in the proper context. Unlike Davis, this case does not involve a misstatement of an element of the entrapment defense.
Similarly, Williams involved no principal instruction, dissimilar charges, and a theory of prosecution different from that in this case. Elress Williams and a codefendant, Torrance Adderly, were charged with trafficking in cocaine and possession of drug paraphernalia. 774 So. 2d at 842. Adderly dropped the drugs when he saw the police; no drugs were found on Williams. Id. The police found other drugs in an apartment. Id. Adderly told the police that Williams had nothing to do with the cocaine; "Williams denied possessing or owning any type of crack cocaine." Id. The judge instructed the jury that it could find "either Defendant" guilty, if it found that Adderly or Williams knowingly possessed a substance that either Adderly or Williams knew was cocaine. Id. at 843. We held that fundamental error occurred because (1) the trial court erroneously charged the jury on elements of the offense and (2) the court incorrectly told the jury "that the evidence applicable to each crime, and not to each defendant, must be considered separately." Id. The standard principals instruction was not given in Williams. In that case, the law of principals was the only legal theory that could have supported a finding that Williams was guilty of trafficking in cocaine that was so tied to Adderly. The Williams instruction allowed for Williams's conviction simply because he was with Adderly at the time of the arrest.
Balthazar and Garzon also rely on cases from other districts which are similarly distinguishable. See Concepcion v. State, 857 So. 2d 299 (Fla. 5th DCA 2003); Dorsett v. McRay, 901 So. 2d 225 (Fla. 3d DCA 2005). In both Dorsett and Concepcion, it does not appear that the principals instruction was given and the opinions do not indicate how the cases were argued. Dorsett states that the defendant was "charged, convicted and sentenced for acting as a `wheelman,' and, therefore, a principal in an armed robbery." 901 So. 2d at 225. The opinion does not say that the principals instruction was given to the jury. If it was not, we agree with the third district that fundamental error occurred in that case. What the opinion in Dorsett primarily discusses is whether the problems with an "and/or" instruction are cured by the standard multiple counts/multiple defendants instruction[2]; Dorsett does not address the effect of the giving of the principals instruction that is central to this case.
With another line of cases we certify a direct conflict. Cabrera v. State, 890 So. 2d 506 (Fla. 2d DCA 2005), and Zeno v. State, 910 So. 2d 394 (Fla. 2d DCA 2005), arose from the same complex, 32 count racketeering, conspiracy and trafficking case with multiple codefendants. In both cases, the "and/or" conjunction linked the names of codefendants in the jury instructions on substantive crimes. Without discussion, the second district rejected the State's argument that the use of the standard `principals' instruction cured the erroneous instructions on the substantive elements of the offenses," Zeno, 910 So. 2d at 396. Also, without analysis the first district followed Zeno in Davis v. State, 922 So. 2d 279 (Fla. 1st DCA 2006). As they have been cited to us in cases before this court, Zeno and Davis stand for the proposition that the "and/or" conjunction in the jury charge on substantive crimes is always fundamental error in a case with multiple codefendants, regardless of context. We certify conflict with Zeno and Davis. See Fla. R. App. P. 9.030(a)(2)(vi).

The Trial Court Committed Fundamental Error in Charging the Jury on Kidnapping in Counts V and VI of the Information
Both Balthazar and Garzon attack the jury charge on Counts V and VI of the information. Those counts charged the defendants with (1) kidnapping Jamie Smith "with intent to inflict bodily harm or to terrorize her or" her mother and (2) kidnapping Sandra Smith "with intent to inflict bodily harm or to terrorize her." Section 787.01(1)(a), Florida Statutes (2004), provides four alternative ways of establishing the intent element of kidnapping; the state charged the defendants in this case with only one theory of intent, the one described in section 787.01(1)(a)3.
On Counts V and VI, the court instructed the jury that to prove the crime of kidnapping, the state had to prove that the defendants had acted "with intent to commit or facilitate the commission of a robbery," the intent element contained in section 787.01(1)(a)2, which was not charged in the information.
Fundamental error occurs where a criminal statute contains two or more distinct methods of committing an offense, consisting of different elements, and a defendant is charged with one of the means, but the jury is instructed in a manner that permits conviction for another, uncharged mode of guilt. See Taylor v. State, 760 So. 2d 298 (Fla. 4th DCA 2000); Hodges v. State, 878 So. 2d 401 (Fla. 4th DCA 2004); Fuentes v. State, 730 So. 2d 366 (Fla. 4th DCA 1999). For example, in Taylor, the trial court committed fundamental error by instructing the jury that it could convict Taylor of aggravated battery if he used a deadly weapon or caused permanent disfigurementseparate violations under section 784.045(1)(a)1. and (1)(a)2., Florida Statutes (2000)when the information charged him only with using a deadly weapon. Taylor, 760 So. 2d at 299. In Hodges, we held that fundamental error occurred where the jury "instruction allowed the jury to find [Hodges] guilty of kidnapping if it found he committed an act which was not charged in the information." 878 So. 2d at 402.
We reject the state's argument that the charging error is harmless. Fundamental error is not subject to harmless error review. Reed v. State, 837 So. 2d 366, 369-70 (Fla. 2002). We therefore reverse appellants' kidnapping convictions in Counts V and VI of the information.
We find the remaining issues on appeal to be without merit. There was sufficient evidence to support the jury's verdict, so the trial court did not err in denying Garzon's motion for judgment of acquittal. The admission of the March 21 and 22 offenses against the same family were inextricably intertwined with the charged offenses, as failed attempts to rob the family of its valuables. See Griffin v. State, 639 So. 2d 966, 968 (Fla. 1994); Hall v. State, 403 So. 2d 1321 (Fla. 1981).
We affirm in all respects, except we reverse appellants' convictions for kidnapping under Counts V and VI of the information.
WARNER, J. concurs.
KLEIN, J., concurs in part and dissents in part with opinion.
Not final until disposition of timely filed motion for rehearing.
KLEIN, J., concurring in part and dissenting in part.
The issue raised by appellants is whether an "and/or" instruction is fundamental error. The majority states on page seven that the standard principals instruction placed all of the other instructions in the proper context. I believe such an instruction is never proper and, depending on the facts, can be fundamental error.
Under an "and/or" instruction the jury is informed that if defendant A has committed all the elements of the crime, B is guilty without having committed any elements, or having the intent that the crime be committed. In the alternative the jury could find both defendants guilty where only A committed some elements of the crime and only B committed other elements. The majority acknowledges that an incorrect instruction on an element of a crime can be fundamental error, Reed v. State, 837 So. 2d 366 (Fla. 2002). In the absence of a principals instruction, all courts, including this one, which have considered it, have found the "and/or" instruction to be so seriously flawed as to be fundamental error. See e.g. Davis v. State, 804 So. 2d 400 (Fla. 4th DCA 2001); Williams v. State, 774 So. 2d 841 (Fla. 4th DCA 2000).
In the written instructions, which the jury had during deliberations, the definitions of the crimes begin on page eighty of the record, and the principals instruction, which was only given once, is found at page eighty-eight. It was not given in conjunction with each crime definition. This jury, going through the written instructions, could have concluded that all defendants were guilty, based on the "and/or" instructions, before ever reaching the principals instruction. The principals instruction, 3.5(a), requires that the defendant "had a conscious intent that the criminal act be done." If the jury did not reach the principals instruction, it would be wrongfully convicting a defendant who could only be guilty under a principals instruction, where the state failed to prove the "conscious intent" required by the principals instruction.
The court also gave instruction 3.12(c), which provides:
A separate crime is charged against each defendant in each count of the information. The defendants have been tried together; however, the charges against each defendant and the evidence applicable to him must be considered separately. A finding of guilty or not guilty as to one or some of the defendants must not affect your verdict as to any other defendants or other crimes charged.
The "and/or" instruction is the opposite of this instruction.
The facts of this home invasion robbery were that two of the defendants were in the home, and a third defendant, who was familiar with the inside of the home, was not present. There was evidence, however, that the absent defendant, Garzon, was speaking to the others on a cell phone while they were in the home committing the robbery and other crimes, one of which was kidnapping. As to the two defendants who were in the home and actively involved in all of the crimes of which they were convicted, I can agree with the majority that the "and/or" instructions, combined with the principals instruction, were not such a serious error as to be fundamental. As to Garzon, however, who was not there, I disagree.
The telephone was not Garzon's, but it was listed to a woman with his last name, and the state contended that she was his sister. It was Garzon's position that he was not on the phone and did not participate. Because Garzon was not present, the "and/or" instructions were so deficient as to be fundamental error. It was far less likely that he would have been convicted of kidnapping, but for the "and/or" instruction, because the object of the home invasion was robbery, and the kidnapping carried out by those present was only incidental. Although Garzon could have been found guilty as a principal, the manner in which the jury was instructed made it unnecessary for the jury to consider whether Garzon had the intent, under the principals instruction, for the kidnapping to have occurred. I emphasize his conviction of the kidnapping, because it demonstrates the seriousness of the error in giving "and/or" instructions where one defendant is less involved than others, but I believe this error was fundamental as to all of Garzon's convictions.
In deciding whether an "and/or" instruction is fundamental error, where there is a principals instruction, the third district considers the facts, which I think is the correct approach. It did so in the cases of Dorsett v. McRay, 901 So. 2d 225 (Fla. 3d DCA 2005), and Lloyd v. Crosby, 917 So. 2d 988 (Fla. 3d DCA 2005), in which the defendants were both involved in the same armed robbery and were tried together. Dorsett was the "wheel man," who was convicted as a principal, in an armed robbery carried out by Lloyd and others. The third district held in Dorsett that Dorsett's appellate counsel had been ineffective in failing to argue that the trial court had committed fundamental error in giving the "and/or" instruction as to Dorsett, the driver. On the other hand, in Lloyd's appeal, arising out of the same trial, the court held that the error in giving the "and/or" instructions was harmless, because Lloyd was one of the armed gunmen who directly held up the victims.
I concur with the result as to Balthazar, but dissent as to Garzon and would reverse his conviction.
NOTES
[1] The dissent seems to suggest that there was something wrong with the principals instruction being given only once, and "not in conjunction with each crime definition." The standard jury instruction does not indicate when the instruction is to be read. See Fla. Std. Jury Instr. (Crim.) 3.5(a). In many cases the principals charge is given only once, after the substantive crimes have been defined, and not multiple times, after each substantive crime. Neither approach is wrong. Neither approach is fundamental error. This is the type of issue that must be preserved by a timely objection, if there is any error at all.
[2] Fla. Std. Jury Instr. (Crim.) 3.12(c).