ON REMAND FROM THE SUPREME COURT OF FLORIDA
 

 ROTHENBERG, J.
 

 We reconsider on remand our opinion in
 
 Brown v. State,
 
 967 So.2d 236 (Fla. 3d DCA 2007)
 
 (“Brown I”),
 
 which was quashed by the Supreme Court of Florida following its decision in
 
 State v. Brown,
 
 3 So.3d 1190 (Fla.2009)
 
 (“Brown II”).
 
 As ordered by the Supreme Court of Florida, we have reconsidered our earlier decision in light of
 
 Garzon v. State,
 
 980 So.2d 1038 (Fla.2008)
 
 (“Garzon II”),
 
 and conclude that based on an examination of the “totality of the record,” the jury instructions given in this case do not constitute fundamental error. Accordingly, we affirm the defendant’s convictions.
 

 THE ISSUE
 

 The defendant, David Dwayne Brown, and the codefendant, Collies Jasper Robinson, were charged with the first degree murders of Eric Williams (Count I) and Edward Leon Bernard (Count II), and the attempted first degree murder of Lawrence Wade (Count III). The defendant was also charged with possession of a firearm by a violent career criminal (Count IV) and display of a firearm while committing a felony (Count V). The defendant and codefendant were tried separately, with the defendant’s trial proceeding on Counts I — III and V.
 

 The jury found the defendant guilty of Counts I — III and V, and he was subsequently sentenced. Although the defendant did not object to the instructions given, other than to object to the name of the codefendant not being included in the instructions, he argued on appeal that the instructions improperly implied that he could be convicted of first degree murder and attempted first degree murder based solely on the acts of another. This Court agreed. Because the evidence as to Counts II and III did not directly implicate the defendant, this Court concluded that the instructions as to those two counts constituted fundamental error. However, because there was direct evidence as to the defendant’s guilt regarding Count I, this Court found no fundamental error and affirmed the defendant’s conviction as to that count.
 
 Brown I,
 
 967 So.2d at 238.
 

 GARZON v. STATE (GARZON II)
 

 The Florida Supreme Court granted review of this Court’s decision in
 
 Brown I,
 
 and stayed the proceedings pending its review of
 
 Garzon v. State,
 
 939 So.2d 278 (Fla. 4th DCA 2006)
 
 (“Garzon
 
 I”). Garzon and codefendants Coles and Balthazar were tried together for seven offenses stemming from a home invasion. As to Garzón, the State’s theory was that he was involved in the criminal scheme although he was not physically present. Without objection, the instructions as to each count included an “and/or” conjunction between the names of the defendants. For example, as to the charge of armed burglary, the jury was instructed as follows:
 

 
 *150
 
 [T]o prove the crime of armed burglary of a dwelling, as charged in Count Two of the information, the State must prove the following three elements beyond a reasonable doubt. Number one, Zamir Garzón
 
 and/or
 
 [Charly] Coles
 
 and/or
 
 Ray Balthazar entered or remained in a structure owned by or in the possession of Sandra Smith.
 

 Number two, Zamir Garzón
 
 and/or
 
 [Charly] Coles
 
 and/or
 
 Ray Balthazar did not have the permission or consent of Sandra Smith or anyone authorized to act for her to enter or remain in the structure at the time.
 

 Number three, at the time of entering or remaining in the structure, Zamir Gar-zón
 
 and/or
 
 [Charly] Coles
 
 and/or
 
 Ray Balthazar had a fully formed, conscious intent to commit the offense of grand theft and/or robbery in that structure.
 

 Garzon I,
 
 939 So.2d at 281 (emphasis added). In addition to the charges on the substantive offenses, the trial court gave the jury the standard charge on principals.
 
 Garzon I,
 
 939 So.2d at 282 (citing Fla. Std. Jury Instr. (Crim.) 3.5(a)). Further, as Garzón, Coles, and Balthazar were tried together, the trial court gave a multiple defendants instruction
 
 [1]
 
 and used a verdict form that was individualized as to each defendant without the use of the “and/or” language.
 
 Garzon II,
 
 980 So.2d at 1040. Balthazar was convicted on all counts, whereas Garzon and Coles were acquitted on one of the seven charges.
 

 On appeal to the Fourth District Court of Appeal, Garzón and Balthazar argued that “the inclusion of the ‘and/or’ conjunction in the jury instructions was fundamental error because the jury ‘could’ have convicted one defendant based solely upon the conclusion that another codefendant’s conduct ‘may have satisfied the elements’ of an offense.”
 
 Garzon I,
 
 939 So.2d at 283. In essence, Garzon and Balthazar argued that because of the “and/or” conjunction, the jury could have convicted them based on the acts of their codefendants without finding that they were acting as principals.
 

 In addressing the issue, the Fourth District, however, noted that not all erroneous jury instructions constitute fundamental error:
 

 To be fundamental, an erroneous jury instruction “must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 [State v.] Delva,
 
 575 So.2d [643, 644-45 (Fla.1991)] (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960));
 
 see Floyd v. State,
 
 850 So.2d 383, 403 (Fla.2002). This means that an erroneous jury instruction is fundamental error “when the omission is pertinent or material to what the jury must consider in order to convict.”
 
 Id.
 
 at 645 (quoting
 
 Stewart v. State,
 
 420 So.2d 862, 863 (Fla.1982));
 
 accord Reed v. State,
 
 837 So.2d 366, 369-70 (Fla.2002). Thus, “[flailing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error and there must be an objection to preserve the issue for appeal.”
 
 Delva,
 
 575 So.2d at 645.
 

 Garzon I,
 
 939 So.2d at 282-83. The Fourth District explained that the “deter
 
 *151
 
 mination of whether fundamental error occurred requires that the ‘and/or’ instructions be examined in the context of the other jury instructions, the attorneys’ arguments, and the evidence in the case.”
 
 Garzon I,
 
 939 So.2d at 283. After considering the “totality of the record,” the Fourth District concluded that the erroneous jury instructions did not constitute fundamental error, reasoning as follows:
 

 This is not a case where the court failed to correctly instruct on an element of the crime over which there was a dispute. All elements of all crimes were correctly charged. What the “and/or” conjunctions placed in issue was whether one defendant could be held criminally liable for the conduct of a codefendant. If the law of principals applies to a defendant’s conduct, that defendant can properly be convicted for a codefen-dant’s criminal acts. Garzón could have been found guilty if either Coles or Balthazar committed a substantive crime and Garzón helped either man commit the crime within the meaning of the principals instruction.
 

 In this ease, the standard principals instruction placed all the other instructions in the proper context. The instruction explained that a defendant is responsible for the criminal act of another person if “the defendant had a conscious intent that the criminal act be done” and the “defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person ... to actually commit the crime.” Fla. Std. Jury Instr. (Crim.) 3.5(a). If the jury found the principals instruction applied to him, Garzón could lawfully have been found guilty of crimes that either Balthazar or Coles, or both, committed in the house.
 

 With respect to Garzón, everyone in the courtroom knew that the issue boiled down to whether the state had proven that he was the person to whom Balthazar spoke over the cell phone during the home invasion.
 

 The prosecution used the principals instruction as the centerpiece of its argument that Garzón was guilty of the crimes committed by his codefendants. The state did not use the “and/or” conjunctions to argue for a legally incorrect or improper theory of guilt.
 

 Garzon I,
 
 939 So.2d at 284.
 

 The Florida Supreme granted review of the Fourth District’s decision in
 
 Garzon I,
 
 and issued its decision in
 
 Garzon II,
 
 addressing whether the unobjected-to “use of the ‘and/or’ instructions together with the standard principals instructions was fundamental error.”
 
 Garzon II,
 
 980 So.2d at 1042.
 

 The Florida Supreme Court agreed with the Fourth District that the use of the “and/or” conjunction did not constitute fundamental error, reasoning:
 

 [TJhis is not a case where the court failed to correctly instruct on an element of the crime over which there was a dispute, as in
 
 Delva/Reed.
 
 Since this case does not present a
 
 Delva/Reed
 
 error, the Fourth District was correct in examining the totality of the record to determine if the “and/or” instruction met the exacting requirements of fundamental instruction error.
 

 Garzon II,
 
 980 So.2d at 1043.
 

 Following its independent review of the “totality of the record,” including the standard jury instruction on principals, the jury instruction on multiple defendants, the individualized verdict form, the attorneys’ arguments, and the jury’s verdict, the Florida Supreme Court concluded that the erroneous instructions did not constitute fundamental error.
 
 Garzon II,
 
 980 So.2d at 1044.
 

 
 *152
 
 Following
 
 Garzon II,
 
 the Florida Supreme Court issued its decision in
 
 Brown II,
 
 quashing this Court’s opinion in
 
 Brown I
 
 and remanding for reconsideration in light of
 
 Garzon II.
 
 Thus, on remand, this Court must determine, based on the “totality of the record,” whether the jury instructions given in the instant case constitute fundamental error.
 

 BASED ON A REVIEW OF THE TOTALITY OF THE RECORD WE FIND NO FUNDAMENTAL ERROR
 

 No fundamental error occurred in this case. This conclusion is based on the indictment, the opening statements, the evidence introduced at trial, the closing arguments, the jury instructions, the verdict form, and the fact that the defendants were tried separately.
 

 The State’s theory of this case was that the defendant and codefendant, acting in concert with one another from a common scheme or plan, killed Eric Williams and Edward Leon Bernard, and attempted to kill Lawrence Wade. That is how this case was charged and tried. The arguments of counsel made it clear that the jury was going to have to determine whether the State proved beyond a reasonable doubt that they were acting together in each instance. The trial court’s instructions to the jury also made it clear that this was the State’s theory of the case and an issue to be resolved by the jury. Because the jury was instructed throughout the proceedings that before the defendant could be held responsible for the actions of another, the State was required to prove that the defendant and that other person were working together, they both had a conscious intent that the criminal acts be committed, and they were helping each other carry out a common criminal purpose, we conclude that the instructions given did not mislead the jury or constitute fundamental error.
 

 A. The Indictment
 

 In all three Counts: I, II, and III, the murder of Eric Williams, the murder of Edward Leon Bernard, and the attempted murder of Lawrence Wade, respectively, the indictment charged that David Dwayne Brown (the defendant) and Collies Jasper Robinson (the codefendant) “each in concert with each other from a common scheme or plan, did unlawfully and felo-niously” kill or attempt to kill the victim.
 
 [2]
 
 
 *153
 
 (Emphasis added). At the beginning of the trial, the trial court read the indictment to the jury. Thus, from the very beginning of the proceedings, the jury was told that the State was charging the defendant and codefendant as acting together to commit these offenses.
 

 B. Opening Statements
 

 In its opening statement, the State described the location of the shooting, Mr. Bernard’s home, as a “neighborhood hangout” from which Mr. Bernard and Mr. Williams would sell drugs and where individuals, including Mr. Williams, would gather to play cards in the carport. The State explained that the evidence would demonstrate the following. Mr. Williams routinely kept an AK-47 rifle within reach to protect himself. On the night of the shooting, Mr. Bernard was having a party at his house. Between 7:00 p.m. and 8:00 p.m., the defendant arrived at the party, headed straight to the carport, and asked Mr. Bernard, “Where’s my money?” After Mr. Bernard failed to respond, the defendant stated, “Do you think I am playing with you?” The defendant left the party, but returned several hours later with a “partner and a plan” — “to get the money or to get these two men.” Upon returning, the defendant walked into the carport and grabbed the AK-47, pointing it at Mr. Williams. Mr. Williams and Mr. Bernard rushed the defendant, and the three men began to struggle for the AK-47. During the struggle, codefendant Robinson exited a vehicle carrying a shotgun. Upon seeing codefendant Robinson with the shotgun, Mr. Wade ran and was shot in the back by codefendant Robinson. After Mr. Bernard dropped to the floor, co-defendant Robinson came “in close for the kill,” shooting Mr. Bernard in the chest at close range. After Mr. Bernard was shot by codefendant Robinson, Mr. Williams stopped struggling for the AK-47 and began to run. While running, the defendant shot at Mr. Williams several times with the AK-47, hitting him in his back, face, thigh, and head. The defendant and his “partner” — codefendant Robinson — left, taking the two weapons with them.
 

 Defense counsel told the jurors that the witnesses they would be hearing from lacked credibility because they are convicted felons who were using drugs and alcohol on the night of the shooting. Defense counsel also suggested that the actual shooter of the shotgun was not the code-fendant, Robinson, but one of the eyewitnesses, Ramlah Aquamina, because gunshot residue was found on his hand.
 

 C. The Evidence
 

 The following evidence was introduced at trial. The defendant, Mr. Bernard and Mr. Williams (the two deceased victims), and a fourth individual were partners in a drug dealing business. On the day of the
 
 *154
 
 shooting, Mr. Bernard was having a party at his house to celebrate a friend’s birthday, and the defendant came to Mr. Bernard’s house twice that evening. During the first encounter, the defendant confronted both Mr. Bernard and Mr. Williams, claiming that they owed him money. Mr. Bernard and Mr. Williams ignored the defendant and the defendant left the party. Nathan Mathis, who was at the party and witnessed this exchange, told Mr. Williams he should pay the defendant the money owed, but Mr. Williams told Mr. Mathis to mind his own business. Mr. Williams then brought out an AK-47 (allegedly for protection because they were selling drugs at the party), and propped it against a wall. Mr. Mathis also testified that there were no other guns at the party that night.
 

 Several hours later, around midnight, the defendant returned to the party, entered the carport, grabbed the AK-47 that Mr. Williams had propped against the carport wall, pointed the gun at Mr. Williams and Mr. Bernard, who were seated at a table playing cards, and tried to fire the gun, which did not fire because the safety was on. Mr. Williams and Mr. Bernard rushed the defendant, and the three men began to struggle over the AK-47. While everyone else ran for cover, Mr. Wade was shot in the back with a shotgun. Mr. Bernard was fatally shot in the chest with the same shotgun at a very close range. The defendant was seen shooting Mr. Williams with the AK-47. Mr. Aquamina, one of the witnesses who heard shots being fired as he fled, called the police, directed them to the house, returned to the scene, and spoke with the police. Pursuant to its investigation, law enforcement issued a BOLO for the vehicle seen leaving the house. Days later, a vehicle matching the BOLO was stopped, and the driver of the vehicle was identified as the defendant and the passenger was identified as the code-fendant, Robinson.
 

 It was later determined that Mr. Williams was shot multiple times with a high-powered rifle such as an AK-47, including shots to his back and one to his chest. The projectiles went through his lung and spinal column paralyzing him. Conversely, Mr. Bernard and Mr. Wade were shot with the same shotgun. The defendant was positively identified by several individuals, and a Nike cap found at the crime scene contained the defendant’s DNA.
 

 D. Closing Arguments
 

 In defense counsel’s initial closing argument, he read the complete standard jury instruction on the law of principals and argued that the evidence did not establish that the defendant and another person acted together as principals to commit the charged offenses. Specifically, defense counsel argued:
 

 The Judge is going to instruct you about principals and the state is obligated to prove each and every essential element as they do in any crime about principals. And the Judge is going to tell you and he will in a little while if the defendant helped another person or persons commit or attempt to commit a crime that defendant is a principal and must be treated as if he had done all of the things that the other person or persons did if the defendant has a conscious intent that the criminal act be done and the defendant did some act or said some word which was intended to and which did insight [sic], cause, encourage, assist or advice [sic] the other person or persons to actually commit the attempt to commit the crime. To be a principal the defendant does not have to be present when a crime is committed or attempted to be committed. Where does it indicate
 
 *155
 
 that the other person and/or David Brown advised each other, told each other, did something together to cause a crime? Where? Where is there any issue, any evidence that they were principals? This other fellow, where? There is no evidence.... The state is obligated to prove to you that somehow they got together to commit this crime or these crimes. There is no such evidence. It doesn’t exist.
 

 (Emphasis added).
 

 Thereafter, the State presented its closing argument, stating that the evidence showed that the defendant shot and killed Mr. Williams with an AK-47; a second individual, who the State contended was the codefendant, Collies Jasper Robinson, shot and killed Mr. Bernard, and shot Mr. Wade with a shotgun; and these two men were acting together as principals to commit these crimes. Therefore, the defendant was guilty of murdering Mr. Bernard and attempting to murder Mr. Wade because the defendant was working in concert with the second shooter. The State argued that although it contended that the second shooter (with the shotgun) was Collies Jasper Robinson, the State was not required to prove the identity of the second shooter. Specifically, the State argued that the defendant believed Mr. Bernard and Mr. Williams owed him money, and “the defendant decided to take justice into his own hands. He and someone else, because the person’s identity is unknown to you.... But he and somebody else came there with the intent of doing harm. They came loaded with a shotgun and were ready to use it.” (Emphasis added). Thereafter, the State also read the standard jury instruction on the law of principals, thus providing this instruction to the jury for a second time. After re-reading the principals instruction to the jury, the State explained that the instruction worked both ways — if the defendant was helping someone else commit the crimes or the other person helped the defendant commit the crimes, they were equally responsible:
 

 In other words, when two people help each other they are both responsible. And one thing that you will decide at the end of this ease is if there are, in fact two people involved.... [W]e have two gunmen and two people who are willing to use those guns. And the fact that one shot one and another shot the other does not change the fact that they were both deeply involved in what was going on. And how do we know that two people were involved?
 

 The State outlined the physical evidence and argued that the physical evidence suggested that two people, working in concert, were involved in the shooting:
 

 It is very clear. All you have to do is put the physical evidence together in the proper way.... We do not have to prove the identity of the second person to you in this trial.... What we do have to prove is that another person was involved and that that other person was acting as a principal with the defendant as I have already discussed with you how we have done that.... [0]nce again bringing in the principal theory, even though it is clear that David Brown did not fire the shot that killed Edward Leon Bernard he is just as guilty as the person who filed [sic] this shot because he was working together with that individual and they were working in concert. And for all intents and purposes, each time that the trigger was pulled there are were [sic] two fingers on the trigger. Both on the shotgun and on the A.K. 47. And those were the fingers of David Brown and the other person, whoever that was. You don’t have to decide who the identity of this person is to hold the defendant re
 
 *156
 
 sponsible. All you have to do, all you have to decide is for all intents and purposes his finger was on the trigger because these guys were working together.
 

 (Emphasis added).
 

 Defense counsel reiterated on rebuttal that the State had to prove that the defendant and the second shooter were working in concert, and argued that the evidence did not support such a finding:
 

 How did they act in concert? How did they agree to kill anybody? ... [T]ell me where any evidence exists that two people tried to help one another in this scenario in this context.... [The State] has to show the connection between those two people and that they somehow in concert decided to kill somebody. That is what they have to show.
 

 (Emphasis added).
 

 E. Jury Instructions
 

 Following closing arguments, the trial court explained to the jury that the defendant had been charged with several crimes, and although all counts were tried together, “each crime and the evidence applicable to it must be considered separately and a separate verdict returned as it [sic] each.” Thereafter, the trial court instructed the jury on the circumstances that must be proven before the defendant could be found guilty of first degree murder, attempted first degree murder, or any lesser included offense.
 

 The trial court instructed the jury that: (1) as to first degree premeditated murder, the State had to prove that the death of each victim was caused by the criminal act of the defendant or another person acting as principal; (2) as to first degree felony murder, the State had to prove that the death of each victim occurred as a consequence of and while the defendant was in the commission of or the attempt to commit murder and he was the person who actually killed each victim or each victim was killed by another person, but both the defendant and the person who killed each victim were principals in the commission of the murder; and (3) as to the attempted murder of Lawrence Wade, the State had to prove that the defendant or another person acting as a principal did some act intended to cause the death of Lawrence Wade that went beyond just thinking or talking about it and the defendant or another person acting as a principal acted with a premeditated design to kill Lawrence Wade.
 
 [3]
 

 
 *157
 
 Following these instructions, the trial court read the standard jury instruction regarding principals — thus providing the jury with this instruction for a third time:
 

 If the defendant helped another person or persons commit or attempt to commit a crime the defendant is a principal and must be treated as if he had done all of the things that the other person or persons did if the defendant had a conscious intent that the criminal act be done and the defendant did some act or-said some word which was intended to and which did insight [sic], cause, encourage, assist or advise the other person or persons to actually commit or attempt to commit the crime.
 

 To be a principal the defendant does not have to be present when the crime is committed or attempted.
 

 CONCLUSION
 

 Based on the totality of the record, we conclude that the instructions provided to the jury did not confuse the jury as to its responsibility nor constitute fundamental error.
 

 As to Count I, the murder of Mr. Williams, several eyewitnesses saw the defendant grab the AK-47 and at least one of these witnesses saw the defendant actually shoot Mr. Williams with the AK-47. Neither the State nor the defense argued during trial or closing arguments that another person participated in the murder of Mr. Williams. Thus, based on the evidence and the arguments of counsel, it is clear that the defendant’s conviction for the first degree murder of Mr. Williams was based on his own criminal acts, not the acts of another person acting as a principal. The trial court’s instructions as to this count, therefore, did not constitute fundamental error.
 

 As to the first degree murder of Mr. Bernard (Count II) and the attempted first degree murder of Mr. Wade (Count III), the evidence, including eyewitness accounts and the location where the spent shotgun casings were located, demonstrate that the defendant was not the person who fired the shotgun at Mr. Wade and Mr. Bernard. Therefore, the defendant’s convictions as to Counts II and III were based on the acts of another person. Nonetheless, in reviewing the “totality of
 
 *158
 
 the record,” we find that the jury instructions did not constitute fundamental
 
 error
 
 because the trial court read the indictment to the jury at the beginning of the trial which charged the defendant as acting in concert with the codefendant from a common scheme or plan to commit the murders and the attempted murder; the trial court read the standard jury instruction to the jury on the law of principals; and the attorneys
 
 repeatedly
 
 communicated to the jurors that they could not convict the defendant for the acts of another person unless they found that the law of principals was met. For example, during its opening statement, the State argued that “[t]he defendant left the party, but returned several hours later with a “partner and a plan” — “to get the money or to get these two men.” Additionally, during closing argument, defense counsel argued: “The state is obligated to prove to you that somehow they got together to commit this crime or these crimes.” Similarly, the State argued in closing, “once again bringing in the principal theory, even though it is clear that David Brown did not fire the shot that killed Edward Leon Bernard he is just as guilty as the person who filed [sic] this shot because he was working together with that individual and they were working in concert.” Finally, on rebuttal, defense counsel once again explained to the jury that in order to convict the defendant for the acts of another, the jury had to find that the defendant and the other person were working in concert: “[The State] has to show the connection between those two people and that they somehow in concert decided to kill somebody. That is what they have to show.” Additionally, during voir dire, the trial court explained the law of principals to the jury, as did the State. Thus, after performing a complete review of the record, we conclude that based on the “totality of the record,” we find there was no fundamental error as to Counts II and III. Accordingly, we affirm the defendant’s convictions.
 

 Affirmed.
 

 [1]
 

 . The multiple defendants instruction read as follows:
 

 A separate crime is charged against each defendant in each count of the information. The defendants have been tried together; however, the charges against each defendant and the evidence applicable to him must be considered separately. A finding of guilty or not guilty as to one or some of the defendants must not affect your verdict as to any other defendants or other crimes charged.
 

 Garzon II,
 
 980 So.2d at 1040.
 

 [2]
 

 . Count I provides in relevant part:
 

 DAVID DWAYNE BROWN ... and COLLIES JASPER ROBINSON, each in concert with the other from a common scheme or plan, did unlawfully and feloniously kill a human being, to wit: ERIC WILLIAMS ... from a premeditated design to effect the death of the person killed or any human being, or while engaged in the perpetration of, or in an attempt to perpetrate any murder of another human being, to wit: LAWRENCE WADE and/or EDWARD LEON BERNARD ..., by shooting the said ERIC WILLIAMS ... and during the course of the commission of the offense, said defendants discharged a firearm or destructive device and as a result of the discharge, death or great bodily harm was inflicted upon ERIC WILLIAMS ..., a human being, in violation of s. 782.04(1), s. 777.011 and s. 775.087, Florida Statutes.
 

 (Emphasis added).
 

 Count II provides in relevant part:
 

 DAVID DWAYNE BROWN ... and COLLIES JASPER ROBINSON, each in concert with the other from a common scheme or plan, did unlawfully and feloniously kill a human being, to wit: EDWARD LEON BERNARD ... from a premeditated design to effect the death of the person killed or any human being, or while engaged in the perpetration of, or in an attempt to perpetrate any murder of another human being, to wit: LAWRENCE WADE and/or ERIC WILLIAMS ..., by shooting the said EDWARD LEON BERNARD ... and during the course of the commission of the offense, said defendants discharged a firearm or
 
 *153
 
 destructive device and as a result of the discharge, death or great bodily harm was inflicted upon EDWARD LEON BERNARD ..., a human being, in violation of s. 782.04(1), s. 777.011 and s. 775.087, Florida Statutes.
 

 (Emphasis added).
 

 Count III provides in relevant part:
 

 DAVID DWAYNE BROWN ... and COLLIES JASPER ROBINSON, each in concert with the other from a common scheme or plan, did unlawfully and feloniously attempt to kill a human being, to wit: LAWRENCE WADE, from a premeditated design to effect the death of a human being, by shooting him with a shotgun, and during the course of the commission of the offense, said defendants discharged a firearm or destructive device and as a result of the discharge, death or great bodily harm was inflicted upon LAWRENCE WADE, a human being, with a weapon, to wit: A firearm, in violation of s. 782.04(1), s. 777.04(1), s. 777.011 and s. 775.087, Florida Statutes.
 

 (Emphasis added).
 

 [3]
 

 . The relevant portions of the trial court's instructions are as follows:
 

 I now instruct you on the circumstances that must be proven before the defendant may be found guilty of murder in the first degree or any lessor [sic] included crime and/or attempted first degree murder or any lessor [sic] included crime.
 

 There are two ways in which a person may be convicted of first degree murder. One is known as premeditated murder and the other is known as felony murder.
 

 Before you can find the defendant guilty of first degree premeditated murder the state must prove the following three elements beyond a reasonable doubt. As to Count one, first Eric Williams is dead.
 
 Second, the death was caused by the criminal act of the defendant or another person acting as a principal.
 
 Third, there is a premeditated killing of Eric Williams.
 

 As to Count Two, Edward Leon Bernard is dead.
 
 Second, the death was caused by the criminal act of the defendant or another person acting as a principal.
 
 Third, there was a premeditated killing of Edward Leon Bernard.
 

 [[Image here]]
 

 Before you can find the defendant guilty of first degree felony murder the state must prove the following three elements beyond a reasonable doubt. As to Count One, first, Eric Williams is dead. Second, the death occurred as a consequence of and while the defendant was engaged in the of [sic] murder. Or the death occurs as a consequence of and while the defendant was attempting
 
 *157
 
 to commit murder. Third, the defendant was the person who actually killed Eric Williams or Eric Williams was killed by a person other than the defendant, but both the defendant and the person who killed Eric Williams were principals in the commission of murder.
 

 As to Count two, Edward Leon Bernard is dead. Second, the death occurred as a consequence of and while the defendant was engaged in the commission of murder. Or the death occurred as a consequence of and while the defendant was attempting to commit murder. Third, the defendant was the person who actually killed Edward Leon Bernard. Or Edward Leon Bernard was killed by a person other than the defendant but both the defendant and the person who killed Edward Leon Bernard were principals in the commission of murder.
 

 In order to convict of first degree felony murder it is not necessary for the state to prove that the defendant had a premeditated design or intent to kill.
 

 [[Image here]]
 

 Before you can find the defendant guilty of attempted first degree murder premeditated murder the state must prove the following three elements beyond a reasonable doubt.
 

 First, the defendant or another person acting as a principal did some act intended to cause the death of Lawrence Wade
 
 that went beyond just thinking or talking about it.
 

 Second,
 
 defendant or another person acting as a principal acted with a premeditated design to kill Lawrence Wade.
 

 Third, the act would have resulted in the death of Lawrence Wade except that someone prevented the defendant from killing Lawrence Wade or he failed to do so.