958 So.2d 496 (2007)
Charles MITCHELL, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-4580.
District Court of Appeal of Florida, Fourth District.
May 30, 2007.
Rehearing Denied July 13, 2007.
*497 Roy Black and Christine M. Ng of Black, Srebnick, Kornspan & Stumpf, P.A., Miami, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.
WARNER, J.
Charles Mitchell appeals his convictions for trafficking in cocaine and trafficking in marijuana. He claims that the court erred in refusing to give his special jury instruction on constructive possession of cocaine which more accurately stated the law to be applied on the facts of this case. We agree that the special jury instruction should have been given instead of the standard instruction which was misleading under these facts. We therefore reverse.
Palm Beach County Sheriff's deputies responded to a Lake Worth residence after receiving a 911 hang-up call. Appellant Mitchell answered their knock. The deputies asked Mitchell to exit the residence. When one of the deputies heard a female crying, he entered the apartment to check on her safety. As he passed through the home to find the female, Ms. Salazar, he observed in plain view numerous small Ziploc bags which contained suspected marijuana. He described them as looking as though they had been thrown on the floor during some sort of struggle.
While one deputy spoke to Salazar in the kitchen, another cleared the rooms of the house and then discovered more contraband. In an open closet he viewed a bag of cocaine, a large bag of marijuana, an electronic scale, and smaller individually-packaged baggies of marijuana. After these drugs were found, the deputies handcuffed Mitchell, who was still outside the residence and had not re-entered the house. The officer placed him in the back of a patrol car. No drugs were found on Mitchell.
Mitchell did not make any statements to police officers. However, Salazar did talk. She told the officers that the baggies of marijuana on the floor belonged to Mitchell. She denied knowledge of the other drugs in the house. She also told the deputy that Mitchell lived at the home where she would periodically stay the night with him.
The deputies secured a search warrant that day and found more drugs in the home. They found drugs in every room except the bathroom. In all, they found in excess of twenty-five pounds of marijuana and over 400 grams of cocaine. They also found $29,000 in cash.
In the main bedroom they found male clothing and one set of female clothing. In another bedroom they found children's furniture and toys. No evidence linked these to Mitchell, except a deputy testified that the clothing would have fit a person about the size of Mitchell. The deputies found plane tickets in Mitchell's name, and they observed pictures of Mitchell with other people throughout the residence. They also found a court event form with Mitchell's name on it next to a digital scale and razor blade. Testing revealed no usable fingerprints on any of the contraband.
Mitchell's van was parked outside the home, and the deputies searched the van but found no drugs. They also searched Salazar's car and found 11.5 pounds of marijuana, almost $6,000 in cash, items belonging to Salazar's daughter, and a registration form for Mitchell's van. No one was charged for the contraband found in the car.
At trial Salazar testified that she and Mitchell had an off-and-on relationship. She said that she incriminated Mitchell the *498 night of the incident, because the deputies threatened her with the loss of her children.
She testified that she, not Mitchell, leased the Lake Worth house, and she still had possession of the home. She identified a copy of the lease in her name which was admitted in evidence. The phone bill and security system contract were in her name. However, Mitchell's name appeared on the electric bill. Salazar explained that this was because she could not obtain service in her own name. According to Salazar, Mitchell did not have a key to the home and did not reside there.
Salazar testified that four months before the incident she purchased a home in Port St. Lucie. At the time of the incident and discovery of drugs, Mitchell's sister and her boyfriend were living at the home. Mitchell's sister was a good friend, and Salazar continued to visit the home frequently. Salazar still had a key to the home. Mitchell never resided in the Lake Worth home, but spent time with her there and at his mother's home in West Palm Beach. One of the deputies testified that a leasing agent for the building told him that a relative of Mitchell lived in the apartment.
On the night the officers responded to the Lake Worth home, Salazar and Mitchell had been fighting at a nightclub close to the Lake Worth home, so they decided to leave the club and go to the Lake Worth residence rather than drive all the way to Port St. Lucie. The fight continued when they arrived at the house, and during the fight the contents of her purse were strewn across the floor.
Based upon this evidence, Mitchell's counsel requested a special jury instruction on constructive possession where the contraband is found on jointly possessed premises. The trial court denied the request and read the jury the standard jury instruction on possession. The jury found Mitchell guilty on both charges, and the court imposed concurrent twenty-year sentences. Mitchell appeals his convictions and sentences, challenging the court's failure to read his special jury instruction instead of the standard instruction.
The trial court read the standard jury instruction on possession:
To "possess" means to have personal charge of or exercise the right of ownership, management, or control over the thing possessed.
Possession may be actual or constructive.
Actual possession means
(a) the thing is in the hand of or on the person, or
(b) the thing is in a container in the hand of or on the person, or
(c) the thing is so close as to be within ready reach and is under the control of the person.
Mere proximity to a thing is not sufficient to establish control over that thing when the thing is not in a place over which the person has control.
Constructive possession means the thing is in a place over which the person has control, or in which the person has concealed it.
If a thing is in a place over which the person does not have control, in order to establish constructive possession the State must prove the person's (1) control over the thing, (2) knowledge that the thing was within the person's presence, and (3) knowledge of the illicit nature of the thing.
Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. In that case, each of *499 those persons is considered to be in possession of that article.
If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.
If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.
(emphasis added). Mitchell proposed to delete the bolded language regarding joint possession of an article and to substitute the following:
To establish constructive possession of a controlled substance, the State must show that Charles Mitchell had dominion and control over the contraband, that he had knowledge that the contraband was within his presence, and that he had knowledge of the illicit nature of the contraband. If the premises on which the contraband is found are in joint, rather than exclusive possession of Charles Mitchell, knowledge of the presence of the contraband on the premises and Charles Mitchell's ability to maintain control over it will not be inferred. The State must establish knowledge and Charles Mitchell's ability to maintain control over it by independent proof of Charles Mitchell's actual knowledge, or evidence of incriminating statements and circumstances other than mere location of the substance.
This language is a modification of a quote from J.M. v. State, 839 So.2d 832, 834 (Fla. 4th DCA 2003) (quoting Dupree v. State, 705 So.2d 90, 94 (Fla. 4th DCA 1998)).
A defendant in a criminal case is entitled to have the jury instructed on the rules of law applicable to his theory of defense if there is any evidence to support the instruction. Smith v. State, 424 So.2d 726, 732 (Fla.1982). In Stephens v. State, 787 So.2d 747 (Fla.2001), the supreme court stated:
In order to be entitled to a special jury instruction, Stephens must prove: (1) the special instruction was supported by the evidence; (2) the standard instruction did not adequately cover the theory of defense; and (3) the special instruction was a correct statement of the law and not misleading or confusing.
Id. at 756 (footnotes omitted).
The state concedes that the special jury instruction accurately states the law. However, the state contends that the facts do not support the modification in the way Mitchell requested and that it could be confusing to the jury. Mitchell, on the other hand, maintains that the standard instruction does not adequately cover his defense on the facts of this case, where he claimed that he was not in exclusive possession of the premises.
Mitchell correctly states that this is a case of constructive possession, but the state argues that it is a case of actual possession. All one needs to read is that portion of the standard jury instruction to recognize that this is not a case of actual possession, which requires the contraband to be in the hand of or within ready reach of the defendant. Actual possession refers to physical possession. See Scruggs v. State, 785 So.2d 605, 607 (Fla. 4th DCA 2001). Because Mitchell was not even in the home when the officers entered, having been removed by the officers, the drugs could not be within his ready reach.
Because this is a case of constructive possession, there is a crucial distinction between joint possession of the premises and exclusive possession of the premises. If the defendant were in exclusive possession of the premises, the knowledge of the presence of the contraband may be inferred. See, e.g., Murphy v. State, 511 So.2d 397, 399 (Fla. 4th DCA 1987). Mitchell's theory of defense, *500 however, was that because the premises were in joint possession, his knowledge of the presence of the contraband and his ability to maintain control over it could not be inferred from his possession of the premises.
The facts do not support a case of exclusive possession but instead support a theory of joint possession of the premises. In the context of contraband possession, we have construed exclusive possession to mean "vested in one person alone." See Lee v. State, 835 So.2d 1177, 1179 (Fla. 4th DCA 2002). Here, the evidence showed joint possession of the premises. Both Salazar and Mitchell were present on the premises when the officers arrived. Salazar was the lessee of the premises and paid many of the bills. Before she moved to Port St. Lucie, Mitchell sometimes stayed with her at the Lake Worth home. Although she told deputies at the scene that Mitchell resided in the premises, she testified at trial that Mitchell did not reside in the apartment. Instead, Mitchell's sister and her boyfriend lived there. Some evidence corroborated this statement.
At best even with Salazar's statement that Mitchell resided on the premises, she had the legal possession as lessee and the ability to enter the premises at will. No evidence was presented to show that Mitchell had a lease agreement which would have given him possessory rights exclusive of Salazar. Furthermore, both were present on the premises when the officers arrived. Therefore, there was ample evidence to support Mitchell's theory that possession of the premises was joint.
In cases of joint possession of the premises, the standard jury instruction is confusing. The instruction discusses joint possession of "the article" but does not discuss joint possession of the premises upon which the article is found. The standard instruction states:
Possession may be joint, that is, two or more persons may jointly have possession of an article, exercising control over it. In that case, each of those persons is considered to be in possession of that article.
The instruction does state, "If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed." However, that seems to contradict the statement that where joint possession is shown, each person can be considered to be in possession of the article.
With respect to joint possession of the premises, the law is well-settled. If the premises where contraband is found is in joint, rather than exclusive, possession of a defendant, knowledge of the contraband's presence and the ability to control it will not be inferred from the ownership but must be established by independent proof. See Brown v. State, 428 So.2d 250, 252 (Fla.1983). Where joint possession of the premises is shown, the knowledge element may be met by contraband in plain view in the common areas of the premises. Id. However, where the contraband is not in plain view, such knowledge cannot be inferred. In this case, some of the contraband was in plain view, but much of it was not. The mere fact that some contraband was in plain view does not permit the inference that the defendant knew of the entire amount of contraband found upon a search of a residence. See Hill v. State, 873 So.2d 491 (Fla. 1st DCA 2004).
The standard jury instruction does not explain what must be proved where possession of the premises is in joint rather than exclusive possession of the defendant. The specially-requested instruction, unlike the standard instruction, instructs the jury that the elements of knowledge and ability *501 to control may not be inferred from the mere fact of joint possession of premises where contraband is found, but must be established by independent proof. Therefore, in this case Mitchell's special jury instruction was necessary in order to present Mitchell's theory of defense.
Finally, the special instruction is not confusing or misleading, and we reject the state's parsing of the language to try to make it seem confusing. On the whole, the instruction correctly states the law and provides to the jury legal principles necessary for it to decide the case. At trial, the state did not object to the instruction on the grounds that it was confusing. In fact, the state did not object at all. Instead, the trial court rejected the instruction because it believed that the standard instruction and the special instruction essentially said the same thing. As we have shown, the special instruction covers legal principles which the standard jury instruction does not.
Because the trial court erred in refusing to give the special jury instruction, we reverse Mitchell's conviction and sentence and remand for a new trial. We also recommend to the Criminal Standard Jury Instruction Committee that it review the standard instruction for modification in cases where an issue at trial involves the joint possession of the premises on which contraband is found.
POLEN and GROSS, JJ., concur.