KAHN, J.
 

 Michael Andrew Nicholson (appellant) challenges his convictions for trafficking in illegal drugs (hydrocodone) in an amount 14 grams or more, but less than 28 grams
 
 *109
 
 (Count One); possession of a controlled substance (diazepam and cocaine in Counts Two and Three, respectively); and possession of drug paraphernalia (Count Four). Appellant contends the trial court erred by denying his motion for judgment of acquittal as to Counts One, Three, and Four; by giving misleading, confusing “and/or” jury instructions; and by imposing judgment and sentence on Count Two after the State nolle prossed it. We affirm the judgment and sentence for Counts Three and Four, vacate the judgment and sentence for Count Two, reverse the judgment and sentence for Count One with instructions to discharge appellant on that count, and remand for the trial court to enter a corrected judgment.
 

 FACTS AND PROCEDURAL BACKGROUND
 

 Two deputies responded to a 911 call reporting a possible armed burglary at a small mobile home familiar to them from previous visits. Appellant and his brother, Daniel Aaron Nicholson, were the only persons there. The brothers invited the deputies to enter the mobile home and explained they had been sitting on the couch with their girlfriends when they heard unusual noises and saw four or five armed men inside the trailer. The brothers asked the deputies to search the premises to ensure no intruders remained. Neither deputy found any evidence of a forced entry, an attempted break-in, or intruders. The deputies described the brothers as scared, confused, and intoxicated or high.
 

 While searching the master bedroom, Deputy Goodwin found a bottle of prescription pills in the name of Preston W. Thomas, who the deputy knew lived at the residence but was not present. As the deputy set the pill bottle on the living room coffee table, he observed what looked like a crack cocaine “rock” clearly visible atop a C.D. case, as well as several plastic baggies with torn or tied-up corners and a white, powdery residue, which subsequent lab analysis identified as cocaine. He also saw a small, dark zippered leather change purse on the coffee table, opened it, and found inside white pills and blue pills. A jar on the table held a baggy containing two razor “box cutter” knives, a folding “butterfly” knife, and additional baggies with apparent drug residue. The candlelight was bright enough to allow someone seated on the nearby couch to see all the items on the coffee table except the pills inside the purse. An F.D.L.E. analysis identified the white pills as 23.6 grams of hydrocodone, a controlled substance. § 893.03(2)(a) 1 -j, Fla. Stat. (2007). The State did not submit the blue pills, suspected diazepam, for analysis. The deputy observed appellant within a few feet of the contraband but never saw him actually touch any of it. A post-arrest search of their persons revealed no contraband on either of the brothers. Law enforcement did not submit any of the contraband to F.D.L.E. for fingerprint analysis.
 

 The State tried appellant and his brother together on the same charges. During the trial, the State nolle prossed Count Two. At the close of the State’s case, the court denied appellant’s motion challenging the legal sufficiency of the State’s proof on the three remaining counts. Appellant and his brother elected not to testify, and the defense presented no witnesses. Without an objection the court read a series of jury instructions inserting “and/or” between the co-defendants’ names in the recitation of the elements of the charged offenses. The jury found appellant and his brother guilty as charged on Counts One, Three, and Four. The court adjudicated appellant guilty and sentenced him on all four counts despite the
 
 *110
 
 nolle prosequi of Count Two. This appeal ensued.
 

 ANALYSIS
 

 Appellant’s first two issues assert error in the denial of judgments of acquittal for legally insufficient evidence on Counts One, Three, and Four. We review de novo whether the evidence is legally sufficient to support the charge, considering the evidence and all reasonable inferences therefrom in a light most favorable to the State.
 
 See Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002).
 

 Count One charged trafficking in hydrocodone, the 33 white pills found inside the change purse. § 893.135(l)(c)l.b., Fla. Stat. (2007). Certain rules of proof apply where the contraband is hidden and not in the defendant’s actual control, and the premises are jointly occupied. “Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.”
 
 State v. Law,
 
 559 So.2d 187, 188 (Fla.1989). Without proof that appellant actually possessed the drugs and paraphernalia, the State had to rely upon constructive possession.
 
 See Robinson v. State,
 
 936 So.2d 1164, 1166 (Fla. 1st DCA 2006). The rules governing constructive possession are well-known. “Constructive possession exists where the accused without physical possession of the controlled substance knows of its presence on or about his premises and has the ability to maintain control over said controlled substance.”
 
 Hively v. State,
 
 336 So.2d 127, 129 (Fla. 4th DCA 1976);
 
 see Hargrove v. State,
 
 928 So.2d 1254, 1256 n. 3 (Fla. 2d DCA 2006) (noting the 2002 enactment of section 893.101(2), Florida Statutes, eliminated the requirement to show the defendant’s knowledge of the illicit nature of the contraband to prove constructive possession of contraband, but allowed an affirmative defense of lack of knowledge of illicit nature). Because appellant did not have exclusive possession of the premises, “knowledge of the contraband’s presence and the defendant’s ability to control the same will not be inferred and must be established by independent evidence.”
 
 Duncan v. State,
 
 986 So.2d 653, 655 (Fla. 4th DCA 2008).
 

 The evidence most favorable to the State demonstrated the brothers and them girlfriends were sitting on the living room couch next to the coffee table shortly before the brothers called 911. Although appellant’s mere proximity to the contraband could not, by itself, prove possession, his location nearby was sufficient to imply his ability to exercise dominion and control over the premises where the deputy found the contraband.
 
 See State v. Reese,
 
 774 So.2d 948, 949-50 (Fla. 5th DCA 2001). The key question remains, then, whether the State made a prima facie showing appellant knew of the presence of the hidden hydrocodone. A change purse is an ordinary object commonly used for lawful purposes and not exclusively or primarily associated with illicit drugs and paraphernalia. Acknowledging the leather change purse itself was in plain view, we find no record evidence “that the incriminating nature of the packaged contraband was immediately apparent,” which is “one of the requirements of ‘plain view’ ” analysis.
 
 Chappell v. State,
 
 457 So.2d 1133, 1134-35 (Fla. 1st DCA 1984). “The mere fact that some contraband was in plain view does not permit the inference that the defendant knew of the presence of all quantities of hidden contraband ultimately found after searching the entire residence.”
 
 Santiago v. State,
 
 991 So.2d 439, 442 (Fla. 2d DCA 2008);
 
 see Hill v. State,
 
 873 So.2d 491, 493 (Fla. 1st DCA 2004).
 
 *?
 
 Because the State failed to prove, through circumstantial evidence or otherwise, that appellant knew the hydrocodone was hidden in the leather change purse, we reverse the conviction for Count One and remand for appellant’s discharge on that count.
 

 Counts Three and Four charged possession of a controlled substance (cocaine) and drug paraphernalia, respectively. §§ 893.03(2)(a)4., 893.13(6)(a), & 893.147(1), Fla. Stat. (2007). The cocaine rock, knives, and baggies were in the open and clearly visible to anyone near the couch and coffee table. Two deputies with special training and experience in recognizing illegal drugs and paraphernalia and drug packaging and distribution testified the corners of baggies are cut or torn and used to package narcotics for sale, and cocaine users often use razor knives to cut “rocks” for smoking. This evidence supports a conclusion that these common items were drug paraphernalia, as the jury found. The presence of the cocaine and paraphernalia in plain view next to where appellant had been sitting a short time earlier satisfied the “knowledge” element.
 
 See Brown v. State,
 
 428 So.2d 250, 252 (Fla.1983);
 
 Sundin v. State,
 
 27 So.3d 675, 677 (Fla. 2d DCA 2009);
 
 Duncan,
 
 986 So.2d at 655;
 
 Mitchell v. State,
 
 958 So.2d 496, 500 (Fla. 4th DCA 2007).
 

 We affirm the convictions on Counts Three and Four. Finding appellant’s claim that he was a mere visitor to the trailer to be a fact issue, the trial court observed that the presence of the co-defendants alone in the residence at 1:00 A.M., coupled with the 911 call and the invitation to law enforcement to search the premises, demonstrated greater authority and control of the premises than that of a visitor and were inconsistent with appellant’s hypothesis of innocence. Where conflicting inferences concerning appellant’s relationship to the mobile home raised questions for the jury to resolve, the trial court did not err in allowing Counts Three and Four to go to the jury.
 
 See Seay v. State,
 
 139 Fla. 433, 190 So. 702, 703 (1939);
 
 Jean v. State,
 
 638 So.2d 995, 997 (Fla. 4th DCA 1994).
 

 Because appellant did not preserve the issue of the trial court’s use of the conjunctions “and/or” between the co-defendants’ names in instructing the jury on the charges, he must show fundamental error.
 
 See Garzon v. State,
 
 939 So.2d 278, 282-83 (Fla. 4th DCA 2006),
 
 approved,
 
 980 So.2d 1038, 1045 (Fla.2008);
 
 see Moton v. State,
 
 8 So.3d 483, 485 (Fla. 1st DCA 2009) (stating fundamental error results where the incomplete or inaccurate instruction “pertains to a genuinely disputed issue”). In some contexts such instructions pose the risk of misleading the jury to believe it can find one co-defendant guilty based solely on the other co-defendant’s conduct satisfying the elements of the crime.
 
 See Salas v. State,
 
 972 So.2d 941, 950 (Fla. 5th DCA 2007). The use of such instructions, however, does not necessarily meet the very high threshold for fundamental error. In
 
 Garzón,
 
 the Florida Supreme Court stated that absent a misinstruction or failure to instruct on a disputed element of a crime, the proper test for assessing the effect of the instruction is the one set forth in the Fourth District Court’s opinion in
 
 Garzón,
 
 which analyzed the instruction “in the context of the other jury instructions, the attorneys’ arguments, and the evidence in the case to decide whether the ‘verdict of guilty could not have been obtained without the assistance of the alleged error.’ ” 939 So.2d at 283 (quoting
 
 State v. Delva,
 
 575 So.2d 643, 645 (Fla.1991));
 
 see Hunter v. State, 8
 
 So.3d 1052, 1070 (Fla.2008). We find no support for appellant’s suggestion the
 
 Garzón
 
 contextual analysis
 
 *112
 
 should be limited to cases involving a “principal” theory of guilt.
 

 Applying the
 
 Garzón
 
 contextual analysis to the co-defendants’ trial, we discern seven factors acting to bar a finding of fundamental error: 1) the same theory of prosecution applied to each co-defendant, and the jury heard precisely the same evidence relating to the brothers, who presented identical theories of defense to the same charges; 2) neither co-defendant made an individualized statement to law enforcement or testified at trial, thereby avoiding a credibility contest between appellant and his brother, and both brothers told the deputies about the alleged armed intruders; 3) no observations of any witness or other evidence implicated one, but not the other, co-defendant; 4) the State’s evidence could not have been easily reconciled with a conclusion that only one co-defendant was guilty and the other was less guilty or not guilty at all; 5) in closing argument, defense counsel repeatedly reminded the jury its verdict for one co-defendant should not influence its verdict for the other one and the jury should not assume the brothers acted together (an argument seeking, at least ostensibly, a jury pardon); 6) at the close of instructions, the court read Florida Standard Jury Instruction (Criminal) 3.12(c), which states a finding of guilty or not guilty as to one defendant must not affect the verdict as to the other defendant; and 7) the co-defendants’ individualized verdict forms were identical in all material respects except for their different names, and the court read appellant’s verdict form using only his name, not “and/or.” The totality of this record eliminated any danger the “and/or” instructions misled or confused the jury.
 
 See Gerds v. State,
 
 64 So.2d 915, 916 (Fla.1953) (recognizing that due process entitles a defendant to have the jury correctly and intelligently instructed “on the essential and material elements of the crime charged and required to be proven by competent evidence”);
 
 Bryant v. State,
 
 30 So.3d 591 (Fla. 2d DCA 2010);
 
 Barrientos v. State,
 
 1 So.3d 1209, 1219-20 (Fla. 2d DCA 2009).
 

 We REVERSE the conviction on Count Two. The State properly concedes that once it nolle prossed that charge, the trial court should not have sentenced appellant on that count. We AFFIRM the judgment and sentence on Counts Three and Four, REVERSE the judgment and sentence on Count One, and REMAND for the court to correct the judgment.
 

 PADOVANO and WETHERELL, JJ., concur.