CONNER, J.
Abdel Odeh appeals his judgment and sentence after a jury found him guilty as charged of attempted first degree murder. On appeal Odeh contends the trial court erred by allowing the jury to hear the investigating officer’s opinion that his claim of self-defense was not legally valid. The opinion was expressed during an interrogation of Odeh and during cross-examination of the officer in front of the jury. Odeh also contends the trial court erred by giving erroneous jury instructions regarding the justifiable use of deadly force. Lastly, Odeh contends that trial counsel rendered ineffective assistance by failing to object to the officer’s opinion statement regarding self-defense and to the improper jury instructions on the justifiable use of deadly force.
*917 The errors asserted on appeal were not preserved. No objection was made to the investigating officer’s opinion on self-defense, and the jury instructions on the justifiable use of deadly force were agreed to by defense counsel. We determine the errors were not fundamental errors. We also determine that the record does not sufficiently support the claim of ineffective assistance of counsel to warrant reversal. Thus, we affirm the judgment and sentence.

Factual Background,

Odeh worked as a clerk in a Star Seven convenience store in Lauderhill with Ronnie Ashkar. The store was located in a high-crime neighborhood, and Ashkar kept a gun in the store. Christopher Morgan entered the store to buy cigarettes. Morgan did not own or have a gun. Morgan, Odeh, and Ashkar gave the jury conflicting versions of the events occurring after Morgan entered the store.

Morgan’s Version of the Incident

Morgan testified that he asked Odeh for a pack of Newport cigarettes and gave him a $5 bill, but Odeh did not give him the cigarettes. When Morgan asked why he was not being served, Odeh gave him a “tree wrap” (a tobacco leaf used for rolling tobacco into a cigarette). Morgan told Odeh he did not want a wrap, he wanted cigarettes. Odeh took the tree wrap back, but he did not return Morgan’s money and began serving another customer. Morgan told Odeh that if he would not serve him, then he should return his money and he would go elsewhere. Odeh threw Morgan’s money back at him; Morgan cursed and took his money. Odeh then told Morgan that he should “get the fuck out of the store.” Odeh and Morgan continued cursing at each other. Odeh threw a candy bar in Morgan’s face, and Morgan then took a box from the counter and threw it at Odeh, hitting him in the front of his body. The two of them continued to pick things up from each side of the counter and throw them at each other. Ashkar told them to stop.
Morgan then thought that Odeh was reaching for a weapon under the counter, so he turned around and walked to the door to leave. When he reached the door, Morgan did not turn back or say anything to Odeh, but went outside to the parking lot. Emphasizing that he did not own a gun, Morgan told the jury he did not tell Odeh that he was going to get a gun to shoot him.
Morgan testified that he walked straight to his car and did not look back. Consequently, he did not see Odeh walk out of the store behind him. When he reached his car, Morgan lifted his shirt to get his keys out of his pocket. He heard only one shot, felt something, and fell to the ground.
Morgan further testified that he remained conscious after falling to the ground. He saw Odeh standing in front of the store holding a gun. Thinking that Odeh was going to shoot him again, Morgan pulled himself by using his arms to the front of the car. Morgan screamed to the next-door barber, who had come outside, to call the police. Morgan saw Ashkar come outside and take Odeh inside the store. Morgan reached into his pocket and got his cell phone to call his girlfriend, who did not answer, so he left a voicemail. Morgan testified that no one came over to assist him while he was lying on the ground.

Odeh’s and Ashlcar’s Versions of the Incident

Odeh and Ashkar testified that Morgan did not ask for cigarettes, but asked instead for a wrap or cigar rolling paper for tobacco. Following the dispute over Morgan’s attempted purchase, they testified that Morgan threw store items at Odeh *918 and tried to attack him. Odeh retaliated and threw items back at Morgan, who was asked to leave the store; he refused. Odeh and Ashkar testified that Morgan continued throwing objects from the counter and attempting to attack Odeh, while Odeh was behind the counter. Ashkar, a large man, intervened and pushed Morgan away from Odeh. Thereafter, Morgan pointed at Odeh and said: “I am going to fucking kill you, I am going to fucking kill you.” Odeh further testified that, as Morgan left the store, he turned around and told Odeh: “I’m going to go to my car and get my fucking gun and blow your fucking head off, I’m going to go to my car and blow your motherfucking head off.” Odeh testified that Morgan additionally threatened to kill Ashkar: “I’m going to get my gun and blow your motherfucking head off and everybody working in the store.”
Ashkar corroborated that Morgan threatened to harm Odeh and that he challenged Odeh to fight outside. Ashkar also testified that Morgan said that he was going to “bring a bullet,” which is slang for shooting someone. Ashkar did not hear Morgan threaten to get a gun from his car.
After threatening to shoot and kill Odeh and Ashkar, Morgan left the store and walked toward his car. Fearing that he was going to be killed, Odeh pressed the silent alarm button to summon the police. Odeh then grabbed the gun kept in the store and ran to the entrance. Ashkar tried to stop him, but he could not. Odeh held the store door open with his leg and remained at the threshold as he watched Morgan approach his car.
Odeh testified that he watched Morgan because he was afraid that Morgan was going to kill Ashkar and him. As Odeh stood at the threshold of the store, Morgan turned toward Odeh, lifted his untucked shirt, and reached into his waistband. He testified that he believed that Morgan was reaching for a weapon, which caused him to fire the gun he held twice. One of the bullets struck Morgan and paralyzed him.

Odell’s Interrogation

Det. Brian Hardy, the lead detective handling the case, conducted an interrogation of Odeh at the Lauderhill Police Dept. Odeh gave a videotaped statement to Det. Hardy, which was shown to the jury. Before voir dire, the state moved in limine to exclude the portion of the video that showed Odeh crying. Defense counsel did not seek to redact, edit, or exclude any portion of the videotaped interrogation.
Det. Hardy questioned Odeh regarding what occurred at the store. Odeh admitted that he shot Morgan. He told Det. Hardy of the verbal exchanges, the throwing of items, and stated that Morgan threatened to kill him and get a gun from his car. He further stated that he shot Morgan because he was afraid of being shot when Morgan lifted his shirt, put his hand in his waistband, and turned toward Odeh.
During the interrogation, Det. Hardy repeatedly told Odeh that his conduct was unlawful and did not constitute self-defense because Morgan had left the store. Of particular concern are the following statements on the videotape shown to the jury without objection (emphasis added):
DET. HARDY: I understand there was a commotion inside the store, I understand that he [Morgan] messed up the store, I understand that there was a little bit of a fight inside the store, okay, but he is leaving, okay, he is gone, that doesn’t give you the right to turn around and shoot him.
DET. HARDY: I could understand, Ab-del, if he stayed inside the store and he starts walking up with a gun and you see him with a gun, you have every right to defend yourself, no *919 questions, I understand that part, but you didn’t do that, you followed him out of the store.
DET. HARDY: Especially if someone is leaving, okay, we’re not allowed to fire our weapons if someone is leaving, if the threat is gone, we can’t do that, that is against the law.
DET. HARDY: Okay. Alright, Abdel, it is against the law to shoot someone, especially who is unarmed, who is leaving, ok. I understand there was a problem. That is our job, that is job to get there, it is our job to find out what is going on, ok, if it’s just the commotion, it is our job, at your request, to have them trespassed, ok, or he could go to jail for the battery that he did to you by throwing that at you, but that still doesn’t give you the right — .
DET. HARDY: I understand that, Ab-del, and I understand that about you, however, this is something that was outside the norm, ok, but you understand that this is against the law, what you did.
DET. HARDY: Okay. That is why we are here, okay. If someone is threatening you with a weapon, yes, you have the right to defend yourself, or, if someone is kicking the ever living crap out of you and that’s the only way you could defend yourself, ok, that’s justified, and we understand that, and the evidence would show, but that’s not the case here tonight.
Because defense counsel did not object or seek to redact any portion of the videotaped statement, the jury heard Det. Hardy repeatedly state that Odeh did not legally act in self-defense.
Following the showing of Odeh’s videotaped statement, Det. Hardy was cross-examined by defense counsel, who discussed Odeh’s statement that had been shown to the jury. The cross-examination resulted in Det. Hardy’s again telling the jury that Odeh’s conduct did not factually or legally constitute self-defense because his fear was unjustified since Morgan had left the store. In addition, defense counsel’s cross-examination elicited testimony from Det. Hardy that he would have acted differently and that Odeh acted unlawfully.

Jury Instruction on Justifiable Use of Deadly Force

Odeh’s defense was self-defense. The trial judge repeatedly asked counsel to review the self-defense jury instructions, including the justifiable use of deadly force instruction prepared by the judge. Without objection from either party, the trial judge inserted the crime with which Odeh was charged into the jury instructions regarding the justifiable used of deadly force. The instructions as given were:
The use of deadly force is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to himself while resisting:
1. Another’s attempt to murder him, or
2. Any attempt to commit Attempted Murder in the First Degree (Actual Possession/Discharge/Great Bodily Harm) upon him, or
3. Any attempt to commit Attempted Murder in the First Degree (Actual Possession/Discharge/Great Bodily Harm) upon or in any dwelling residence, or vehicle occupied by him.
A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent
1. Imminent death or great bodily harm to himself or another, or
2. The imminent commission of Attempted Murder in the First Degree (Actual Possession/Discharge/Great *920 Bodily Harm against himself or another.
Defense counsel and the prosecutor agreed to the judge’s jury instructions.

Legal Analysis

Trial counsel did not object to Det. Hardy’s opinion statement regarding Odeh’s claim of self-defense. Trial counsel consented to the jury instructions on the justifiable use of deadly force. Consequently, neither ground asserted for reversal on appeal was preserved by a contemporaneous objection. “Only when error is fundamental can the error be raised on appeal in the absence of a contemporaneous objection.” J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998). Thus, we review both grounds to determine if there is error, and if there is error, whether the error was fundamental error.

Det. Hardy’s Opinion Statements Regarding Self-Defense

This court has observed:
Generally, “a witness’s opinion as to the guilt or innocence of the accused is not admissible.” E.g., Martinez v. State, 761 So.2d 1074, 1079 (Fla.2000). Florida statutory law excludes such opinion testimony, regardless of its relevance, “on the grounds that its probative value is substantially outweighed by unfair prejudice to the defendant.” Id.; see § 90.4.03, Fla. Stat. (2007). The danger of prejudice increases when an investigating officer is permitted to offer an opinion as to the defendant’s guilt.
Battle v. State, 19 So.3d 1045, 1047-48 (Fla. 4th DCA 2009) (emphasis added). It seems axiomatic that an officer’s opinion regarding a legal defense raised by an accused is tantamount to an opinion as to the guilt or innocence of the accused.
This court has recognized there is a difference between an investigating officer giving an opinion as testimony before a jury, and an investigating officer giving an opinion during the interrogation of a suspect. We recently upheld the admission of evidence of investigating officers stating their opinions to a suspect during an interrogation. In Eugene v. State, 53 So.3d 1104 (Fla. 4th DCA 2011), this court affirmed a first-degree murder conviction and life sentence despite the appellant’s argument that the trial court erred in allowing the jury to hear, over defense objection, four statements by the interrogating detectives that indicated their belief as to the appellant’s guilt and their theory as to what happened. We said, “[n]ot everything a detective says to a defendant during a recorded interrogation is unfairly prejudicial under [F.S. Section] 90.403.” Id. at 1112. We concluded that an interrogating detective’s statements to a suspect, when placed in their proper context, could be understood by a rational jury to be interrogation techniques used by law enforcement officers to secure confessions. Id.
As the state aptly points out in its answer brief, “[t]he issue of whether an officer’s out-of-court opinion of an accused’s defense during an interview should be excluded appears to be an issue of first impression in Florida.” The state discusses cases[1] from six other jurisdictions which the state contends deal with an analogous situation. However, we do not agree that the cases deal with an analo *921 gous situation. All of the out-of-state authorities cited by the state address an interrogation where the officer gives an opinion that the suspect was not telling the truth. In some of the cases, the officer stated during the interrogation his opinion of what happened factually when the crime occurred. In some of the cases, the officer offered an explicit opinion that the suspect was lying. None of the cases deal with an officer stating his opinion as to whether the defendant’s assertion of a legal defense has merit.
Law enforcement officers have never been considered to be legal experts in a court proceeding.[2] However, a juror may reasonably assume an officer has some training in criminal law and therefore can properly opine as to the legal merits of a defense to a crime. Allowing an improper opinion by a law enforcement officer on a matter of law encourages an improper assumption on the part of the jury that the officer’s opinion is legally correct. While it is safe to assume that jurors can recognize as an interrogation technique that an investigating officer may offer an opinion about facts during an interrogation to elicit a response from a criminal suspect, it is not safe to assume that jurors can recognize as an interrogation technique that an investigating officer may offer an opinion about the law during interrogation to elicit a response from a criminal suspect. Thus, we determine it was error to allow the jury to hear the opinion of Det. Hardy during interrogation that Odeh could not legally claim self-defense in this case. When Det. Hardy responded to questions by defense counsel during cross-examination, the error was invited. See Bryan v. Bryan, 930 So.2d 693, 697 (Fla. 3d DCA 2006) (“ ‘[Hinder the invited-error doctrine, a party may not make or invite error at trial and then take advantage of the error on appeal.’ ”) (quoting Goodwin v. State, 751 So.2d 537, 544 n. 8 (Fla.1999)).
We next examine whether the error of allowing the jury to hear Det. Hardy’s opinion of Odeh’s claim of self-defense during interrogation was fundamental error requiring reversal as an exception to the contemporaneous objection rule. Our supreme court has stated:
“[I]n order to be of such fundamental nature as to justify a reversal in the absence of timely objection the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.” Brown v. State, 124 So.2d 481, 484 (Fla.1960) (holding that the alleged error “did not permeate or saturate the trial with such basic invalidity as to lead to a reversal regardless of a timely objection”). Thus, an error is deemed fundamental “when it goes to the foundation of the case or the merits of the cause of action and is equivalent to a denial of due process.” J.B. v. State, 705 So.2d 1376, 1378 (Fla.1998).
F.B. v. State, 852 So.2d 226, 229 (Fla.2003). It does not appear to us that the admission of evidence of Det. Hardy’s opinion during Odeh’s interrogation constitutes fundamental error which amounts to a denial of due process. His opinion did not permeate or saturate the trial with basic invalidity. The state never suggested or implied that Det. Hardy was an expert on the law. The state did not allude to his opinion regarding self-defense in its opening statement. The only reference to Det. Hardy’s opinion regarding self-defense in the state’s closing argument was the fol *922 lowing: “And, as Detective Hardy told you, even if he threatened to get a gun and had left the store, the threat is gone, still not legal, not legal.” However, the state could have made 'precisely the same argument if the jury had never heard Det. Hardy’s opinion. After reviewing the entire record of the trial, we cannot say the guilty verdict could not have been obtained without Det. Hardy’s opinion on self-defense. Having determined the error of admitting evidence of Det. Hardy’s opinion was not fundamental error, a contemporaneous objection was required to preserve the issue for appeal. Because the error was not properly preserved, we affirm as to this ground.

Jury Instruction on the Justifiable Use of Deadly Force

The defense agreed to and made no objection to the jury instructions given by the trial court regarding the justifiable use of deadly force. Thus, any error regarding those instructions was not preserved for appellate review. As to this ground for appeal, we first analyze whether there was error in the instructions, and if so, we address whether the error was fundamental error which would require reversal without a contemporaneous objection.
The trial judge instructed the jury on the justifiable use of force using the portion of Florida Standard Jury Instruction (Crim.) 3.6(f), Justifiable Use of Deadly Force, in which section 782.02, Florida Statutes is the statutory basis for the instruction. The standard jury instruction is to be given in the following format:
The use of force likely to cause death or great bodily harm is justifiable only if the defendant reasonably believes that the force is necessary to prevent imminent death or great bodily harm to [himself] [herself] while resisting:
1. another’s attempt to murder [him] [her], or
2. any attempt to commit (applicable felony) upon [him] [her], or
3. any attempt to commit (applicable felony) upon any dwelling house occupied by [him] [her], or
4. any attempt to commit (applicable felony) in any dwelling house occupied by [him] [her].

Insert and define applicable felony that defendant alleges victim attempted to commit.

The trial judge also instructed the jury on the justifiable use of force using the portion of Florida Standard Jury Instruction (Crim.) 3.6(f), Justifiable Use of Deadly Force, in which sections 776.012 and 776.031, Florida Statutes are the statutory bases for the instruction. The standard jury instruction is to be given in the following format:
A person is justified in using deadly force if [he] [she] reasonably believes that such force is necessary to prevent
1. imminent death or great bodily harm to [himself] [herself] or another, or
2. the imminent commission of (applicable forcible felony) against [himself] [herself] or another.

Insert and define applicable forcible felony that defendant alleges victim attempted to commit. Forcible felonies are listed in § 776.08, Fla. Stat.

 As stated, the “applicable felony” and “applicable forcible felony” to be inserted is a crime “that defendant alleges the victim attempted to commit.” Thus, when the trial judge inserted the crime charged against Odeh instead of a crime allegedly committed by the victim, the trial judge did not give an accurate instruction. The logical choices for the “applicable felony” and “applicable forcible felony” (other *923 than murder) in this case, based on Odeh’s claimed belief that Morgan was about to pull a gun from his waistband, were aggravated assault or aggravated battery.
Odeh argues on appeal, and we agree, that by inserting the crime he was charged with as the “applicable felony” and the “applicable forcible felony,” the trial judge left the jury with the impression that Odeh was justified in using deadly force only if Odeh believed Morgan was attempting to murder him. As Odeh correctly points out, he would have been justified in using deadly force if Morgan was reaching for a gun to assault him or shoot to wound him. Thus, we find the jury instruction was erroneous as given because the trial judge did not give the instruction from the viewpoint of the “applicable felony” or “applicable forcible felony” “that defendant alleges victim attempted to commit.”
However, we find the error was not fundamental. Odeh consistently and steadfastly stated during his interrogation and during his testimony before the jury that he believed Morgan was intending to murder him. Odeh emphatically maintained that Morgan repeatedly threatened to get a gun to kill him. He never said Morgan was getting a gun to scare him or perhaps wound him.
In instructing the jury on the justifiable use of deadly force under Section 782.02, the first alternative the judge instructed on was the use of deadly force “while resisting an attempt to murder him.” The fact that in giving other alternatives, the trial judge set the standard higher for the type of murder does not make the error fundamental to the point of denying Odeh of a due process right to a fair trial. All of the alternative versions of the type of murder given in the erroneous jury instruction were completely consistent with Odeh’s belief that Morgan was reaching for a gun to murder him. The erroneous instruction did not deprive Odeh of the opportunity to present his defense: self-defense to avoid being killed by a gun.
In instructing the jury on the justifiable use of deadly force under sections 776.012 and 776.081, the first alternative the judge instructed on was the use of deadly force “necessary to prevent imminent death or great bodily harm to himself or another.” That portion of the instruction would have allowed Odeh to argue he was justified in using deadly force in situations other than where he believed he was going to be murdered by Morgan. The instruction as given on the second alternative, where the trial court improperly inserted the crime charged against Odeh, was nonetheless consistent with Odeh’s emphatic statement that he believed Morgan was going to kill him with a gun. That instruction also did not prevent Odeh from presenting his defense.
In assessing fundamental error regarding the jury instructions it is significant that the state did not quote or specifically address the trial court’s instructions on the justifiable use of deadly force in its closing argument. The state made no attempt to strengthen its case by relying on the erroneous instructions.
Because the erroneous jury instructions were not fundamental error, the defense agreed to the instructions as given, and the error was not preserved with a contemporaneous objection, we affirm as to this ground.

Ineffective Assistance of Counsel

Finally, we address Odeh’s contention on appeal that the record demonstrates that trial counsel was ineffective to such an extent that reversal is required. Ineffective assistance of counsel generally cannot be raised for the first time on appeal. See Consalvo v. State, 697 So.2d 805, 811-12 (Fla.1997); Noble v. State, 543 *924 So.2d 402 (Fla. 4th DCA 1989). A claim of ineffective assistance of counsel is properly made in a motion for post-conviction relief under Fla. R. Crim. P. 3.850. Jean v. State, 41 So.3d 1078, 1080 (Fla. 4th DCA 2010). Odeh has not shown that his case qualifies for the rare exception to this general rule where “the claimed ineffectiveness is apparent on the face of the record.” Kidd v. State, 978 So.2d 868, 869 (Fla. 4th DCA 2008). Thus, we decline to reverse on direct appeal based on Odeh’s claim of ineffective assistance of counsel.
Having addressed all issues raised on appeal, the judgment and sentence are affirmed.
WARNER and LEVINE, JJ., concur.

. The cases discussed in the state’s answer brief are: Dubria v. Smith, 224 F.3d 995 (9th Cir.2000); State v. Cordova, 137 Idaho 635, 51 P.3d 449 (2002); State v. Elnicki, 279 Kan. 47, 105 P.3d 1222 (2005); Lanham v. Commonwealth, 171 S.W.3d 14 (Ky.2005); State v. O'Brien, 857 S.W.2d 212 (Mo.1993); State v. Palmes, 964 S.W.2d 241 (Mo.Ct.App.1998); State v. Demery, 144 Wash.2d 753, 30 P.3d 1278 (2001).

. The refusal of courts to recognize law enforcement officers as experts on law probably explains why the state was unable to find any legal precedent for an officer giving his opinion during an interrogation as to the availability of a legal defense.