# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2122
_____

JEFFREY R. NOLLEY,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Santa Rosa County.
David Rimmer, Judge.

February 9, 2018

LEWIS, J.

    Appellant, Jeffrey R. Nolley, appeals his convictions and sentences for trafficking in methamphetamine, unlawful possession of pseudoephedrine, possession of cannabis, and possession of drug paraphernalia and raises three issues, only two of which merit discussion. Appellant argues that the trial court erred by denying his motion for judgment of acquittal as to the trafficking count because the evidence was insufficient to establish constructive possession. Appellant further contends that fundamental error occurred when the detective gave opinion testimony about his guilt; or, in the alternative, defense counsel rendered ineffective assistance that is apparent on the face of the record by failing to challenge the testimony. For the reasons that follow, we disagree and, therefore, affirm.

**Facts**

Appellant was charged with trafficking in amphetamine or methamphetamine (28 grams or more, but less than 200 grams) (Count 1); unlawful possession of pseudoephedrine (Count 2); possession of cannabis (less than 20 grams) (Count 3); possession of drug paraphernalia (Count 4); and possession of the prescription drug Cyclobenzaprine without prescription (Count 5). Count 5 was *nolle prossed*.

The evidence at trial established that Appellant lived in a one-room garage apartment on Richard Thomley's property. Thomley, who lived in the main residence, had partitioned off a room in his detached garage, which was located in the back of his fenced property. The apartment was small, about fifteen by fifteen feet, and was separated from the rest of the garage by a door. Appellant lived in the apartment by himself from July 2015 until his arrest in March 2016, but often had visitors. After finding his garage filled with smoke and emitting a strong smell on several occasions, Thomley informed Detective Jerry Nash that he suspected Appellant was making methamphetamine in the apartment and that one of the people who was visiting the apartment was Joshua Scott. To corroborate the information Thomley provided, Nash checked Appellant's purchases of pseudoephedrine, as compiled by the National Precursor Log Exchange ("NPLEx"). The NPLEx records showed that Appellant made seven purchases between December 2015 and March 2016, which, Sergeant Blake Weekley testified, is excessive and explains why an eighth purchase was blocked.

Nash searched the dumpster that was located on the county right-of-way, just outside of Thomley's gate and near the garage, and that served Thomley's and his son's residences. The dumpster contained receipts for Appellant's purchases of an instant cold pack, plastic tubing, and lithium batteries and Scott's purchase of pseudoephedrine, which, Nash testified at trial, are all items used in manufacturing methamphetamine. Nash also searched a burn pile that was located near the garage apartment and inside the fenced property, and in it he found burned batteries with the tops cut off, burned blister packs, and a Coleman fuel can, which, Nash testified, were also items used in manufacturing

2

methamphetamine. Thomley testified that he never burned anything in the burn pile.

Subsequently, the police set up surveillance at Appellant's apartment and observed him arriving with Scott and Amy Thompson. The only thing they carried into the apartment was Thompson's purse. After about five minutes, the police did a "knock and talk." The only people inside the apartment were Appellant, Scott, and Thompson. Upon learning that Appellant had pseudoephedrine on his person, Nash arrested him. During the ensuing search, Nash found in Appellant's pockets a pipe that was used to smoke methamphetamine and a box of Sudafed along with Scott's receipt for it. Nash testified that Sudafed contains pseudoephedrine, which is the main ingredient in manufacturing methamphetamine, and that it is common for people who manufacture methamphetamine to have Sudafed purchased by others because one is allowed to purchase only so many boxes in a month.

After Appellant's arrest, his apartment was secured and searched pursuant to a warrant. The police found in the one-room apartment numerous items consistent with a meth lab, including a hydrogen chloride gas generator and a one-pot cook vessel under the bathroom sink, fourteen one-pot cook jugs, nine additional hydrogen chloride gas generators, three empty Coleman fuel containers, three empty Drano containers, plastic tubing, salt, pealed lithium battery casings, empty pseudoephedrine boxes and blister packs, empty ice compression boxes, a glass pipe used to smoke methamphetamine, empty lighter fluid containers, a receipt for pseudoephedrine, coffee filters with chemical residue, and an empty Voss water bottle. Most of the items were found in heavy-duty garbage bags that also contained regular household garbage and a receipt with Appellant's name. Marijuana was found on the dresser and inside a backpack that also contained mail belonging to Appellant. There was no doubt in Weekley's mind that the items found in Appellant's apartment were remnants of a meth lab. Thomley testified that none of the items found in the apartment belonged to him. The liquid from the one-pot vessel was tested and contained about ninety-three grams of methamphetamine.

3

Most of the items were hazardous material that had to be destroyed because they are so corrosive that they eat through the bottles and continue to produce gas. Weekley testified that the bottles had been sitting for some time because it would have taken at least a week or two for the amount of deterioration observed on some of them to occur. Nash explained that the liquid from the one-pot vessel was placed into a glass jar, then into a plastic container, and then into a paint can for safekeeping because, as could be seen in the pictures, it eats through the bottles, deteriorates the glass container lids, and leaks out.

In cross-examining Nash, defense counsel called into question the police investigation in part by eliciting testimony that Scott was let go even though a pipe was found on his person, he was on the run with warrants, and he was not charged with trafficking methamphetamine (though he was charged with distribution of a listed chemical) and that Thompson likewise was not arrested. In turn, the State elicited the following testimony on redirect without objection:

> [STATE]: And you were also asked about Joshua Scott. He was not arrested on that date, is that correct?
>
> [NASH]: Correct.
>
> [STATE]: Why is that?
>
> [NASH]: I try and go after the meth cook, not the people buying the boxes of Sudafed. And from the information gathered that night that is what Mr. Scott was. Mr. Scott was arrested at a later date.
>
> [STATE]: So based on your investigation along with the information you obtained at the residence did you make a determination, as to who was cooking methamphetamine at that apartment?
>
> [NASH]: Yes, sir.
>
> [STATE]: And who was it?

4

[NASH]: [Appellant].

In moving for a judgment of acquittal on Count 1, Appellant argued that the State failed to meet its burden with regard to the elements of dominion, control, and knowledge so as to prove constructive possession of the one-pot vessel. The trial court denied the motion.

Appellant's mother and sister testified that weeks before Appellant's arrest, Thomley was remodeling his house and had contractors on his property. Appellant's mother further testified that Thomley frequently had visitors at his home and that Appellant's apartment was lockable only from the inside and, to her knowledge, he did not have the key to it in case he got locked out and the door remained unlocked during the day while he was at work. However, she never saw anyone enter Appellant's apartment and take garbage bags inside it.

During closing argument, defense counsel contended that the government failed to meet its burden and threw everything against the wall to see what stuck, and argued, "[Nash] wasn't even going to tell you that Josh Scott was on the run unless I asked him. He wasn't going to tell you that they let him go. He wasn't going to tell you that Amy Thompson was there. They let her go, if I hadn't asked him." During rebuttal closing, the State responded in part, "What did Detective Nash tell you why he did not arrest Mr. Scott on that day? Because he was focused on the cook. The one in possession [of] over 28 grams of methamphetamine on that day. That's [Appellant]." Appellant was convicted of the charged offenses, and this appeal followed.

## Analysis

### *Denial of Motion for Judgment of Acquittal*

An appellate court reviews a trial court's denial of a motion for judgment of acquittal *de novo* to determine whether the evidence is legally sufficient to sustain a conviction; in doing so, the court must consider the evidence and all reasonable inferences therefrom in a light most favorable to the State. *Kemp v. State*, 166 So. 3d 213, 216 (Fla. 1st DCA 2015). In a case where the State submitted some direct evidence, the denial of a motion for

5

judgment of acquittal will be affirmed if it is supported by competent and substantial record evidence. *McWatters v. State*, 36 So. 3d 613, 631 (Fla. 2010).[*]

To prove that Appellant committed the crime of trafficking in methamphetamine, the State had to prove that: (1) he knowingly possessed or manufactured a certain substance; (2) the substance was methamphetamine or a mixture containing methamphetamine; and (3) the methamphetamine or mixture containing it weighed fourteen grams or more. *See* § 893.135(1)(f), Fla. Stat. (2016); Fla. Std. Jury Instr. (Crim.) 25.13(a). Possession may be actual or constructive. *Evans v. State*, 32 So. 3d 188, 189 (Fla. 1st DCA 2010); *see also* § 893.135, Fla. Stat.; Fla. Std. Jury Instr. (Crim.) 25.13(a). Constructive possession exists when the defendant knows of the presence of the contraband and can maintain dominion and control over it. *Evans*, 32 So. 3d at 189; *see also* Fla. Std. Jury Instr. (Crim.) 25.13(a). When a defendant is in exclusive possession of the premises where the contraband is found, his knowledge of the presence of the contraband and his power and intent to control the contraband may be inferred. *See Smith v. State*, 125 So. 3d 359, 361 (Fla. 1st DCA 2013); *Mitchell v. State*, 958 So. 2d 496, 499 (Fla. 4th DCA 2007); *see also* Fla. Std. Jury Instr. (Crim.) 25.13(a). On the other hand, when the premises where the contraband is found are in joint possession, the State must establish the knowledge and ability to maintain dominion and control elements by independent proof. *Evans*, 32 So. 3d at 190; *see also* Fla. Std. Jury Instr. (Crim.) 25.13(a). The independent proof may be evidence establishing that the defendant had actual knowledge of the presence of the contraband in the place where it was found or circumstantial evidence from which a jury might properly infer that the defendant had knowledge of the presence of the contraband. *Evans*, 32 So. 3d at 190.

The parties disagree about whether this case involved joint or exclusive possession of the premises. To recap, the undisputed evidence showed that Appellant was the sole resident of the

---

[*] Appellant did not argue in the trial court, or on appeal, that the circumstantial evidence standard applies.

6

apartment; the police observed Appellant, Scott, and Thompson arriving together at the apartment about five minutes prior to the "knock and talk," and the only thing they carried inside was Thompson's purse; and meth oil is highly corrosive, and some of the bottles in the apartment were so corroded that it would have taken at least a week or two for such damage to occur, making it highly unlikely that the meth oil was carried inside the purse and into the apartment. Based on these facts, viewed in the light most favorable to the State, we find persuasive the State's argument that this is an exclusive possession of premises case, making it proper to infer Appellant's knowledge of the presence of the contraband and his ability to control it.

We further find that even if this were a joint possession of premises case, the State presented independent proof of the knowledge and ability to control elements. In addition to the aforementioned evidence, Appellant's small, one-room apartment was filled with items consistent with a meth lab, including the one-pot cook vessel, fourteen one-pot cook jugs, ten hydrogen chloride gas generators, three empty Coleman fuel containers, three empty Drano containers, plastic tubing, salt, pealed lithium battery casings, empty pseudoephedrine boxes and blister packs, empty ice compression boxes, a glass pipe used to smoke meth, empty lighter fluid containers, a receipt for pseudoephedrine, and coffee filters with chemical residue. Most of the items were located inside garbage bags that also contained household trash and a receipt with Appellant's name. Thomley testified that none of the items in Appellant's apartment belonged to him and he never went inside the apartment. There was no evidence of anyone entering and taking the garbage bags into Appellant's apartment. The evidence further showed that Appellant had made extensive pseudoephedrine purchases; Thomley suspected he was making meth in the apartment due to the smell and smoke; and, at the time of his arrest, Appellant was in actual possession of a meth pipe and the box of Sudafed Scott had purchased for him. There was simply no evidence to suggest that Appellant did not have knowledge or control over the meth oil or the items that were used to manufacture it. Therefore, the trial court did not err in denying Appellant's motion for judgment of acquittal.

### *Detective's Opinion Testimony about Appellant's Guilt*

A witness's opinion about the guilt or innocence of the defendant is inadmissible pursuant to section 90.403, Florida Statutes, which excludes relevant evidence when its probative value is substantially outweighed by unfair prejudice. *Martinez v. State*, 761 So. 2d 1074, 1079 (Fla. 2000) (explaining that "there is an increased danger of prejudice when the investigating officer is allowed to express his or her opinion about the defendant's guilt" because it "could convey the impression that evidence not presented to the jury, but known to the investigating officer, supports the charges against the defendant"). When the error is preserved, opinion testimony about the defendant's guilt is subject to the harmless error analysis. *Id.* at 1081. When the error is not preserved, the fundamental error analysis applies, whereby an error is deemed fundamental only in the rare case where it reaches down into the validity of the trial to the extent that a guilty verdict could not have been obtained without its assistance. *Sheppard v. State*, 151 So. 3d 1154, 1166 (Fla. 2014).

Here, Detective Nash's testimony that he tries to go after the meth cook, not the person buying the Sudafed, and that the information gathered indicated that Scott was the buyer of Sudafed, was not erroneous. That testimony was offered on redirect examination merely to explain why Scott was not arrested on the same day as Appellant, and the defense had opened the door to the explanation during cross-examination by calling into question the police investigation and eliciting testimony that Scott was let go even though a pipe was found on him, he was on the run with warrants, and he was not charged with trafficking methamphetamine. *See Rolle v. State*, 215 So. 3d 75, 77-79 (Fla. 3d DCA 2016) (finding no merit in the appellant's argument that the detective improperly commented on his guilt by testifying that he determined based on his investigation that Ajuste was not involved in the crime because the detective was simply explaining why the police released Ajuste, and was not opining about the appellant's guilt, and the defense opened the door to the explanation by arguing that the police arrested the wrong person and let the actual perpetrator, Ajuste, go free). But the State did not stop there.

The State then elicited testimony from Nash that based on his investigation and the information obtained at the residence, he determined it was Appellant who was cooking methamphetamine in the apartment. Nash's opinion testimony about Appellant's guilt was improper. *See Martinez*, 761 So. 2d at 1079. However, we disagree with Appellant that the error rises to the level of fundamental error because it does not reach down into the validity of the trial to the extent that a guilty verdict could not have been obtained without its assistance. The erroneous testimony was brief, did not become the focus of the trial, and was clearly offered to explain why Scott was not arrested on the day of Appellant's arrest. While the State repeated the testimony in closing, it did so only once and only to rebut the defense's argument that the police investigation was inadequate and Nash was not going to tell the jury that Scott was on the run and that he and Thompson were both let go. Furthermore, there was ample evidence of Appellant's guilt, including evidence that he was the sole resident of the apartment that contained the meth oil, dozens of items used in manufacturing methamphetamine, and cannabis; he had made extensive pseudoephedrine purchases; and a meth pipe and box of Sudafed were found on his person at the time of his arrest. *See Odeh v. State*, 82 So. 3d 915, 918-24 (Fla. 4th DCA 2011) (finding that it was error for the jury to hear the officer's statements during the taped police interview that the appellant did not legally act in self-defense because an officer's opinion about the defendant's legal defense is tantamount to an opinion as to his guilt, but concluding that the error was not fundamental, and declining to find ineffective assistance of counsel on the face of the record).

We also decline Appellant's invitation to find ineffective assistance of counsel on the face of the record for the failure to challenge Nash's opinion testimony because this is not one of those rare cases where deficient performance and prejudice are apparent on the face of the record. *See Monroe v. State*, 191 So. 3d 395, 403 (Fla. 2016) (explaining that an appellate court may grant relief for ineffective assistance of counsel on direct appeal only where counsel's ineffectiveness is apparent from the face of the record and a waste of judicial resources would result from remanding the matter for further litigation); *see also Morales v. State*, 170 So. 3d 63, 67 (Fla. 1st DCA 2015) (declining to find ineffective assistance of counsel on direct appeal because such finding requires

"ineffectiveness obvious on the face of the record, indisputable prejudice, and an inconceivable tactical explanation for the conduct"); *Odeh*, 82 So. 3d at 923-24 (explaining that a claim of ineffective assistance of counsel generally cannot be raised for the first time on appeal and instead must be raised in a motion for postconviction relief).

Therefore, we affirm Appellant's judgment and sentence without prejudice to his raising a claim of ineffective assistance of counsel in a motion pursuant to Florida Rule of Criminal Procedure 3.850. *See Elmore v. State*, 172 So. 3d 465, 467 (Fla. 1st DCA 2015) (affirming the appellant's convictions and sentences without prejudice for him to file a proper motion for postconviction relief or a petition alleging ineffective assistance of counsel); *see also Beazley v. State*, 148 So. 3d 552, 554-55 (Fla. 1st DCA 2014) (declining to hold that ineffective assistance of counsel was apparent on the face of the record, but noting that the appellant could raise the issue in a motion for postconviction relief ); *Wade v. State*, 812 So. 2d 600 (Fla. 1st DCA 2002) (affirming the appellant's conviction and sentence without prejudice to his right to raise his claims of ineffective assistance of counsel in a rule 3.850 motion).

AFFIRMED.

OSTERHAUS and BILBREY, JJ., concur.

——————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

——————————————

Andy Thomas, Public Defender, Glenna Joyce Reeves, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Jason W. Rodriguez, Assistant Attorney General, Tallahassee, for Appellee.